516 P.2d 726 (1973)
Ricky EUBANKS, Appellant,
v.
STATE of Alaska, Appellee.
No. 1938.
Supreme Court of Alaska.
December 3, 1973.
*727 Lawrence J. Kulik, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.
Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, John E. Havelock, Atty. Gen., Juneau, for appellee.
Before RABINOWITZ, C.J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.
CONNOR, Justice.
After trial by jury, Ricky Eubanks was found guilty of grand larceny. His appeal from the judgment of conviction turns on the admission of certain testimony into evidence.
During the day of April 18, 1972, fifteen-year old Diane Brotzman was at her parents' home in Anchorage, Alaska, with her boyfriend, Michael. Her parents were both at work. She had apparently been having some difficulty with her parents, and Michael had been having trouble with the juvenile authorities. He had been considering leaving the Anchorage area and wanted Diane to accompany him. Shortly before noon, Michael called a friend, nineteen-year old Ricky Eubanks, for a ride home. Eubanks was at his home with his friend Jim Arnell; as there was little gasoline in Eubanks' car, they rode to Diane's home in Arnell's car.
After their arrival, a Panasonic portable television set and two rifles were removed from the Brotzman home and deposited in Arnell's car. The items were then taken *728 downtown to be pawned. Eubanks and Arnell apparently handled the pawnshop transactions, after which Diane took her friends out to lunch and filled Arnell's car with gasoline. She did not return home for a week even though she took no extra clothing or toiletry articles. When Mr. Brotzman arrived home and discovered the items to be missing, he filed a complaint which led to Eubanks' indictment under AS 11.20.140.[1]
The primary issue at trial was whether Eubanks knew he was committing larceny. He admitted participation in the transactions and relied on a claim of lack of guilty knowledge. Diane, as witness for the state, testified that she had assured Eubanks the articles were hers, and that he thought he was merely assisting her in disposing of her own property. Ricky put forth testimony which in all salient aspects coincided with Diane's. Her testimony upon impeachment and that of a police officer revealed that she had once told a different story about the events of that day.
Appellant advances two contentions upon appeal: (1) that it was error to admit, over objection, testimony about the use of the pawning proceeds, which disclosed a separate offense, and (2) that it was error to allow the prosecution, over objection, to introduce the details of appellant's prior conviction.
As the state's first witness, Diane stated that she had asked Eubanks and Arnell to pawn some of her things because she needed money. The prosecuting attorney began to question her about why she needed money and then abandoned the inquiry before she answered.[2]
He later directed her attention to a prior conversation with Trooper Shook and, over objection, elicited that she told the officer the money was used to purchase heroin. Trooper Shook later verified, again over objection, this conversation, but gave a different account of who actually bought the drugs.[3]
The state is allowed to impeach the credibility of its own witness through prior inconsistent statements,[4] and need not show surprise or damage to its case.[5] The requirements for the proper foundation for impeachment purposes are found in Civil Rule 43(g)(11) [c]:
"A witness may be impeached by evidence that he has made at other times statements inconsistent with his present testimony. The statements must first be related to him, with the circumstances of times, places, and persons present, and the witness shall be asked whether he has made such statements and, if so, shall be allowed to explain them."
*729 Those requirements were not met with regard to the impeachment of Diane Brotzman. Her statements were not inconsistent. Her earlier statement to Trooper Shook, that the money was used to purchase heroin, in no way contradicts her statement at trial that she wanted some money. The prosecution, however, went even further and introduced the officer who gave a different account of Diane's statement. In Beavers v. State, 492 P.2d 88, 92 (Alaska 1971), we held that faced with a denial of prior inconsistent statements, the state is justified in calling the person to whom the statement was made. Here, there was no denial; Diane was not confronted with her inconsistent statement nor was she given an opportunity to admit, deny or explain the prior statement. Both the testimony of Diane upon cross-examination by the state and of Trooper Shook, describing the earlier conversation about the use of the proceeds, is inadmissible for failing to meet the requirements of the rules governing impeachment and the proper foundation for such impeachment.[6]
Appellee contends that the heroin testimony is admissible, regardless of its impeachment value, on the basis that it is relevant to the material issue of Eubanks' motive and state of mind at the time of the transactions. Unless evidence revealing the commission of an offense for which the accused is not charged is relevant to a material fact in the case at trial, it is not admissible. Watson v. State, 387 P.2d 289, 293 (Alaska 1963). Even when such evidence is relevant, the probative value must outweigh its prejudicial impact. Howard v. State, 496 P.2d 657, 661 (Alaska 1972); Gafford v. State, 440 P.2d 405, 408 (Alaska 1968), cert. denied 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969). The prejudicial effect of associating the defendant with heroin is great; the probative value of the association in the context of this case, is, at best, minimal. Drug use or addiction has been received to circumstantially prove motive when the crime charged involved the theft of narcotics. State v. Howell, 474 P.2d 778 (Ore.App. 1970); Riley v. State, 168 Tex.Cr.R. 417, 328 S.W.2d 306 (1959); People v. Rodis, 145 Cal. App.2d 44, 301 P.2d 886 (1956). In this state, evidence of prior narcotics transactions has been admitted on the issue of motive for homicide when the accused's prior drug dealings with the deceased were tinged with acrimony and anger. Gafford v. State, supra, at 408.
An examination of the record of this case reveals only that Eubanks may have committed a separate offense. The state did not connect the use of the proceeds to any other evidence or introduce additional evidence which related to or formed a part of the chain of inferences needed to find that Eubanks had a guilty intent and knew that he was committing a larceny. It was not clear whether Eubanks actually bought or used the drugs in question. At no time was it indicated that he was an addict in need of drugs, that he used drugs often, or that drugs had been discussed prior to the events of that day. Purchase of heroin, without more, does not advance the inquiry into the defendant's state of mind when he participated in pawning the items from the Brotzman home. Drug users may sometimes steal in order to support their habit; people who steal may sometimes be drug users. However, to introduce a possible drug association without more in order to indicate that the defendant must be a thief requires precisely the type of leap of faith the evidence rules have been designed to prevent. Because the prejudicial content of the evidence of possible prior misconduct far outweighs its minimal probative value, the evidence is inadmissible for the purpose of proving motive or intent.[7]
*730 It was argued at trial and in the briefs that the disputed evidence is admissible as statements in furtherance of a conspiracy. At oral argument, appellee conceded that this theory is untenable in the context of this case. Diane's statements to Trooper Shook were made nearly six months following the crime charged. Admissions and confessions made after the termination of a conspiracy are not admissible against a co-conspirator, and it is not implicit that a conspiracy includes efforts to conceal any earlier illegal acts after the fact.[8] Even if the crime charged could be considered a conspiracy, the controversial statements were made far after its termination.[9]
The second issue on appeal concerns the admission of the details of Eubanks' prior conviction. Ricky testified on his own behalf. Near the close of direct examination, defense counsel elicited testimony to the effect that he had a recent prior conviction for burglary. This was done after a request for a protective order was denied. Mr. Eubanks gave the nature of the conviction, the date, the sentence and the fact that he had pled guilty. He also said:
"Yeah. I mean like I said, I'd just gotten put on 5 years probation, I couldn't afford to be taking a bunch of hot merchandise down to a pawn shop and giving it to a pawn shop owner."
On cross-examination of the defendant, the state asked, over objection, the type of place burglarized and the fruits of that crime. Eubanks responded that it was a home and that some guns and a stereo were taken.
A witness may not be impeached by the party against whom he is called by evidence of particular wrongful acts, except that it may be shown that he was convicted of a crime.[10] Although a defendant is technically not authorized to bring up the subject of his prior conviction under our rules of procedure, as a matter of strategy defense counsel often has the defendant do so "in order to lessen the prejudicial impact such evidence may carry with it when used by the prosecution for impeachment purposes." Gafford v. State, 440 P.2d at 413. In Gafford, we said that the prosecution's inquiry must be limited to the name of the crime, time and place of conviction, and sentence imposed. To elicit the place burglarized and the items stolen in a prior conviction goes beyond the Gafford rule.
In the instant case, the defendant was not minimizing or falsifying the nature of his prior conviction; if this were the situation, the state may then have been justified in delving further into the details of that conviction. McKee v. State, 488 P.2d 1039, 1041 (Alaska 1971). The statement that he committed the prior crime and pled guilty although perhaps an attempt to enhance credibility, does not justify the introduction of details unrelated to the question of credibility.[11] Eubanks' assertion concerning probation only emphasized his prior record, a procedure not normally damaging to the proescution's case. It was merely a common sense observation that larceny under the circumstances was a particularly unwise course of action. Eubanks' statements did not make the details of his prior crime relevant on the issue of credibility; their admission went beyond the Gafford prohibition and was prejudicial. In our view the prosecution improperly *731 tried to connect the two crimes in question by showing that they both involved guns and electronic equipment taken from a home.
To be admissible, such details must fall into one of the exceptions to the rule prohibiting evidence of other crimes, when the basic facts surrounding the prior convictions have independent relevance.[12] If the prior crimes are nearly identical to the crime at issue, performed in an unusual or distinctive fashion, such details are relevant for the purpose of identification and showing the requisite guilty knowledge. The California Supreme Court, in People v. Schader, 71 Cal.2d 761, 80 Cal. Rptr. 1, 457 P.2d 841 (1969), noted that the details introduced to show an identical modus operandi must be probative and if they are found to be, the probative value must be weighed against their prejudicial effect before admission.
"In determining relevance, the trial court must look behind the label describing the kind of similarity or relation between the other offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong." People v. Schader, supra, 71 Cal.2d 761, 80 Cal. Rptr. 1 at 9, 457 P.2d 841, 849 at 849-850.
The trial court in this case never looked beyond the label. No other evidence of the prior conviction was introduced other than the site and the fruits of that burglary. The Gafford rule takes note of the highly prejudicial effect of prior convictions upon a jury.[13] All care must be taken to ensure that the accused is allowed his opportunity to defend unburdened with the fear that a trivial remark will trigger the introduction of details of prior convictions not otherwise independently admissible. The admission of the details of the prior burglary, in the context of this case, can only be considered to be prejudicial.
The state's main witness, Diane, on direct examination, and the defendant both testified that defendant did not have a larcenous intent. The other witnesses for the state, excluding Trooper Shook, did not add or subtract from this story. Diane's testimony upon impeachment and that of Trooper Shook brought forth a different version of the day in question and introduced evidence attempting to circumstantially link the accused to a larceny. The details of the prior conviction were also an attempt at circumstantial proof. Both were improperly admitted. In view of the relative paucity of other evidence connecting defendant with a crime, the importance of the jury determining the credibility of the major witnesses, and the highly prejudicial content of the improperly admitted evidence, the case must be reversed and remanded. The evidence in question would necessarily have appreciably affected the jury's verdict.[14]
Reversed and remanded.
NOTES
[1] AS 11.20.140 provides in relevant part:

"A person who steals money, goods, or chattels, ... which is the property of another, is guilty of larceny... ."
[2] What for?
A So I could spend it.
Q Okay. Spend it on what?
[DEFENSE COUNSEL]: Objection irrelevant.
THE COURT: Overruled.
Q Spend it on what?
A I don't know, I just... .
Q Did they both arrive at the same time... . ."
[3] Diane said that she told Trooper Shook, "Ricky gave me the money after hocking it for me and I gave it to Jim and Jim went and got some heroin for me."

Tropper Shook testified that Diane told him, "Ricky Eubanks and Jim Arnell pawned the stuff. They spent the money on junk, heroin and hash. I [Diane] got some of the hash  hash and some of the heroin." There had been no verbatim statement or transcript of this conversation, only a summary.
[4] Civ.R. 43(g)(11) [a, c], applicable to criminal trials, R.Crim.P. 26(a); Beavers v. State, 492 P.2d 88, 91 (Alaska 1971).
[5] Hobbs v. State, 359 P.2d 956, 966 (Alaska 1961). A party producing a witness may not impeach the credit of its witness through evidence of bad character, Civ.R. 43(g)(11) [a], and evidence of narcotics use or addiction is not admissible where the only purpose is to impeach the witness as inherently unreliable. Howard v. State, 496 P.2d 657, 660 (Alaska 1972). The evidence of the drug purchase must then fall under the rules governing impeachment through prior inconsistent statements.
[6] Evidence of prior inconsistent statements may be treated as substantive evidence. Beavers v. State, 492 P.2d 88, 94 (Alaska 1971). This holding enhances the importance of adhering to the rules of evidence governing impeachment.
[7] To the extent that the prosecution sought to elicit testimony that Eubanks purchased something with the proceeds, the examination was proper, as it would have some relevancy as to whether he intended to commit larceny. At retrial it would be permissible to question Diane as to whether she had made a previous statement indicating that Eubanks used part of the proceeds to make purchases without, however, mentioning the prejudicial nature of those alleged purchases.
[8] McCormick, The Law of Evidence, § 267, at 645 (2d ed. Edward W. Cleary general ed. 1972); Yokely v. United States, 237 F.2d 455, 458 (9th Cir.1956).
[9] We do not reach the more thorny question of whether conspiracy is a criminal offense under the law of Alaska.
[10] Civ.R. 43(g)(11) [b].
[11] In People v. Sevastos, 117 Ill. App.2d 104, 252 N.E.2d 745, 749-750 (1969), defendant stated that he had pled guilty to a felony. The state was allowed only to inquire into the nature of the felony.
[12] McCormick, supra note 7, § 190.
[13] At least one court has banned the use of prior convictions by the prosecutor on the issue of credibility, taking into account the highly prejudicial nature of such evidence. State v. Santiago, 492 P.2d 657 (Hawaii 1971). However the court did not discuss "the situation where the defendant has himself introduced testimony for the sole purpose of establishing his credibility as a witness." Id. at 661.
[14] Spaulding v. State, 481 P.2d 389, 393 (Alaska 1971); Love v. State, 457 P.2d 622, 629-632 (Alaska 1969).