**Phillip OKSOKTARUK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3986.**

Supreme Court of Alaska.

May 9, 1980.

---

Walter Share, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

James Gould, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

At 2:30 a. m. on November 11, 1977, approximately one-half hour after entry had been gained through a boarded up window, Donald Mack was observed in Kelly's Photo Lab by a private security guard. The police were summoned and Mack and the defendant, Phillip Oksoktaruk, were found hiding on the premises and were arrested. Oksoktaruk allegedly told the police that he had entered the store to escape the cold, and to sleep, and that he had done so on previous occasions. Kelly's manager, who arrived on the scene shortly after the arrests, testified that he'd found no property disturbed or missing.

Mack subsequently pled guilty to burglary and testified at trial against Oksoktaruk, who did not testify and presented no evidence. Mack testified that he and the defendant had entered the photo lab with the intention of stealing merchandise. The security guard told the jury that he had seen Mack rummaging through some papers, and a police officer recounted the excuse offered by Oksoktaruk at the time of his arrest. In addition the state was permitted to introduce evidence of a prior burglary committed by Oksoktaruk. Tried before a jury, Oksoktaruk was found guilty of burglary not in a dwelling,[1] and was sentenced to five years imprisonment with two suspended.

In this appeal he challenges the admission into evidence of his prior conviction, the prejudicial effect of several jury instructions, and the destruction of a tape recording of Mack's confession to the police. On the basis of the first error specified we have concluded that a new trial is required.

## THE PRIOR BURGLARY

The last three witnesses called by the state gave testimony concerning a burglary of the Anchorage Fur Factory committed by Oksoktaruk in January, 1976. The evidence showed that the defendant and one accomplice had cut a hole in the roof of the store, and had lifted furs out without actually setting foot on the premises. The prior burglary was offered by the state to prove that when Oksoktaruk entered Kelly's Photo Lab, he did so with the intent to steal required to sustain a conviction under AS

---

1. AS 11.20.100 provides:

   A person who breaks and enters a building within the curtilage of a dwelling house but not forming a part of it, or who breaks and enters a building or part of it, or a booth, tent, railway car, vessel, boat, or other structure or erection in which property is kept, with intent to steal or to commit a felony in it, is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than two nor more than five years.

11.20.100,[2] and the evidence was admitted for that purpose.

The danger inherent in informing a jury that a defendant has committed a prior criminal act is self-evident: it is all too likely that a determinative inference of present guilt will be drawn from the fact of the prior act, thus diluting the requirement that present guilt be proved beyond a reasonable doubt.[3] As a result, even though a prior crime may show a propensity on the part of a defendant to commit crimes, which in turn is relevant to the question of present guilt, it is a presumption in our law that the prejudicial effect of introducing a prior crime outweighs what probative value may exist with regard to propensity. No case by case balancing is permitted; a prior crime may not be admitted to show propensity.[4]

When a prior act is relevant to prove a material fact, however, we have recognized that in certain instances its probative value may be greater than its value in proving propensity, and may then outweigh its prejudicial impact.[5] In such cases the trial court must balance the competing interests.[6] In this case the trial judge found that intent was a contested issue, that the state needed the relevance of the prior burglary in light of the "reasonable doubt" created by the other evidence going to intent, and that the prejudicial impact of the prior burglary would not be such that the jurors' passions would be aroused against the defendant. We are in substantial disagreement with this assessment.

This court's decisions have consistently been in accordance with the view that, notwithstanding its many exceptions, the rule regarding evidence of prior crimes is a "rule of exclusion of evidence and not one of admission . . . ." See United States v. Burkhart, 458 F.2d 201, 204 (10th Cir. 1972). If prior crimes were found admissible whenever offered to prove a fact classified as material to the prosecution's case, "the underlying policy of protecting the accused against unfair prejudice . . [would] evaporate through the interstices of the classification." E. Cleary, McCormick on Evidence § 190, at 453 (2d ed. 1972).

Thus, in Eubanks v. State, 516 P.2d 726, 731 (Alaska 1973), when the prosecution introduced details of the defendant's prior conviction for burglary to demonstrate that on the occasion in issue the defendant was not innocently pawning merchandise as he had claimed, we reversed, holding that "such details are relevant for the purpose of . . . showing the requisite guilty knowledge," only "[i]f the prior crimes are nearly identical to the crime at issue, [and are] performed in an unusual or distinctive fashion . . . ." 516 P.2d at 731. In Gould v. State, 579 P.2d 535, 539 (Alaska 1978), we reversed a conviction because the state had failed to show any "affirmative link" between the defendant's addiction to heroin and his alleged robbery, 579 P.2d at 539.[7] And in Freeman v. State, 486 P.2d 967, 979 (Alaska 1971), we held that at least where a defendant does not

2. See note 1 supra.

3. See Michelson v. United States, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–219, 93 L.Ed. 168, 173–74 (1948); United States v. Burkhart, 458 F.2d 201, 204 (10th Cir. 1972); 22 C. Wright and K. Graham, Federal Practice and Procedure § 5239, at 436–38 (1978); Comment, Other Crimes Evidence at Trial: Of Balancing and Other Matters, 70 Yale L.J. 763, 764 (1961).

4. See Gould v. State, 579 P.2d 535, 538 (Alaska 1978); Eubanks v. State, 516 P.2d 726, 729 (Alaska 1973). Rule 404(b) of both the Alaska (effective August 1, 1979) and Federal Rules of Evidence provides in part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

5. See, e. g., Frink v. State, 597 P.2d 154, 169 (Alaska 1979). The second sentence of Evidence Rule 404(b), supra note 4, provides that evidence of other crimes
may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

6. See Frink, supra at 169.

7. Eubanks had resolved the identical issue in similar fashion. 516 P.2d at 729.

affirmatively deny culpable intent, a prior crime may be admitted only "where there is a particularly close similarity and proximity between the facts of a prior offense and the facts of the offense charged." 486 P.2d at 978.

Conversely, we have upheld the admission of evidence of prior crimes when a defendant's credibility as a witness has been in issue, *Buchanan v. State*, 599 P.2d 749 (Alaska 1979); *Richardson v. State*, 579 P.2d 1372, 1376–77 (Alaska 1978); *Lowell v. State*, 574 P.2d 1281, 1283–84 (Alaska 1978); when the prior acts have involved either the victim or complaining witness of the alleged acts, *Frink v. State*, 597 P.2d 154, 169 (Alaska 1979); *Braham v. State*, 571 P.2d 631, 640 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978); *Ladd v. State*, 568 P.2d 960, 967 (Alaska 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *Nicholi v. State*, 451 P.2d 351, 357 (Alaska 1969); *Gafford v. State*, 440 P.2d 405, 408 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969); *Watson v. State*, 387 P.2d 289, 293 (Alaska 1963); when the prior act occurred contemporaneous in time with and "set the stage" for the crime charged, *Kugzruk v. State*, 436 P.2d 962, 967 (Alaska 1968); or when the prior act was committed "in a similar manner, under almost identical circumstances," as the crime charged. *Demmert v. State*, 565 P.2d 155, 158 (Alaska 1977). Our cases are thus in accord with the orientation of a leading treatise-writer, who urges that a prior crime be "so related

to the crime charged in point of time or circumstances that evidence thereof is significantly useful in showing the defendant's intent in connection with the crime charged,"[8] before evidence of the prior crime is judged more probative than prejudicial.[9]

The nexus between Oksoktaruk's burglary of the fur store and his alleged burglary of the photo lab two years later does not meet the standard of relevance we have previously demanded. The only characteristic shared by the proven and alleged crimes is that both involve an intent to steal. The inference to be drawn by the jury, therefore, was simply that since Oksoktaruk once before intended to steal, he was capable of formulating the intent to steal from Kelly's Photo Lab; the forbidden "guilt by propensity" could be stated no differently.[10] Since we are unable to state with any certainty that the prejudicial evidence did not have a "substantial influence" on the jury's decision, *Gould v. State*, 579 P.2d 535, 540 (Alaska 1978), we cannot permit the defendant's conviction to stand.

We will briefly discuss those additional points raised by Oksoktaruk that may surface again should there be a second trial.

## JURY INSTRUCTIONS

The last paragraph of instruction 21 charged the jury as follows:

Whenever it is possible, you will reconcile conflicting or inconsistent testimony, but where it is not possible to do so, you should give credence to that testimony

---

**8.** 1 C. Torcia, Wharton's Criminal Evidence § 245, at 556 (13th ed. 1972).

**9.** We recognize that various authorities believe that, as long as a prior and alleged crime share the same specific intent, the prior crime may be considered highly probative of the alleged crime on the issue of intent, and that the similarities between crimes required when identity is sought to be proved, for example, need not be present. *See, e. g., United States v. Danzey*, 594 F.2d 905, 913 n.6 (2d Cir. 1979). While the distinction drawn is a valid one, at least to the extent that a greater degree of similarity should be required to prove identity than intent, we must re-emphasize that we approach the rule as an exclusionary rule, and believe that the

fundamental question to be asked is whether the reliability of the inference to be drawn from the fact of a prior crime is greater than or different in kind than the propensity inference.

**10.** The jury was instructed in a manner leaving no doubt as to the inference to be drawn from the evidence of the prior burglary:

[W]here all the elements of an alleged earlier offense of a like nature are established by evidence which is clear and conclusive, the jury may, but is not obliged to, draw the inference and find that in doing the act charged in the Indictment, the accused acted willfully and with specific intent, and not because of mistake or accident or other innocent reason.

which, under all the facts and circumstances of the case, appeals to you as the most worthy of belief.

The two problems created by this instruction have been articulated by the Fifth Circuit.[11] First, in providing that the jury should reconcile, if possible, conflicting testimony, the instruction subtly perpetuates the presumption specifically disapproved by this court in *Galauska v. State*, 532 P.2d 1017, 1018 (Alaska 1975), namely that "a witness is presumed to speak the truth."[12] Second, instructing the jury that, when confronted with irreconcilable testimonies, it "should give credence" to that version of events "worthier of belief," reasonably implies not only that one version must be believed, but that one version must be believed completely and all others rejected completely.[13] When applied to the conflict in the instant case between Mack's testimony that Oksoktaruk entered Kelly's with the intent to steal, and the police officer's testimony that Oksoktaruk told him that he only wanted to get in from the cold, the problem takes on a serious dimension. For to find the defendant guilty the jury was required to believe beyond a reasonable doubt that Oksoktaruk intended to steal; yet instruction 21 implied that the jury should believe Mack completely if it found his version merely "worthier of belief."

Thus the instruction not only "interferes with the province of the jury to determine credibility of witnesses, . . . serves to raise doubt in the juror's mind as to his role and adds a confusing factor to jury deliberations," *Galauska*, 532 P.2d at 1018 (footnotes omitted), it creates a danger that the prosecution's burden to prove guilt beyond a reasonable doubt will be reduced. *See Howard v. State*, 583 P.2d 827, 831–32 (Alaska 1978); *Menard v. State*, 578 P.2d 966, 970 (Alaska 1978).

A trial court may certainly attempt to furnish jurors with guidance with respect to evaluating inconsistent testimony, and in this case the bulk of instruction 21 did so in a clear and fair fashion.[14] The last paragraph of the instruction, however, unnecessarily drew conclusions which would be best left to the jury in its role as the ultimate judge of credibility, and should not be given should there be a second trial.

■ Oksoktaruk also challenges instruction 21(b), which stated:

Alaska Statute 12.45.020 provides as follows:

A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

11. *United States v. Holland*, 526 F.2d 284, *modified on rehearing*, 537 F.2d 821 (5th Cir. 1976). On rehearing the court concluded that the erroneous instruction constituted harmless error in the context in which it was given. 537 F.2d at 823.

12. In *Holland* the error was far less subtle since the jury was told: "Now it is your duty, if you can, to reconcile the testimony of all the witnesses so that all witnesses shall have spoken the truth." 526 F.2d at 285.

13. In *Holland* the all or nothing option was more explicit, but no mandatory language was used: "If, however, you are unable to reconcile the testimony, you may then reject the testimony of such witness or such witnesses as you believe to be untrue or mistaken, and give credence to the evidence you think most worthy of belief." 526 F.2d at 285.

14. For instance the jury was instructed as follows:

[T]he impeachment of a witness does not necessarily mean that his testimony is completely deprived of value or that its value is destroyed in any degree. The effect, if any, of the impeachment upon the credibility of the witness is for you to determine.

A witness wilfully false in one part of his testimony may be distrusted in other parts. But discrepancies in a witness' testimony or between his testimony and that of other witnesses, if there were any, does not necessarily mean that the witness should be discredited.

We therefore do not intimate that the giving of the misleading paragraph would necessarily have constituted reversible error. *See Menard v. State*, 578 P.2d 966, 970 (Alaska 1978).

The above statutory requirement of corroboration is based on an assumption that an accomplice might falsely accuse others of a crime in order to purchase for himself immunity from punishment. This assumption is dispelled and the statutory requirement satisfied when the corroborating evidence tends to induce in the minds of the jurors a rational belief that the accomplice was speaking the truth when he implicated the defendant in the criminal event.

Evidence corroborates when it induces a rational belief that the narrative of the accomplice is a correct one; when it dispels the assumed notion that he was an inventor of facts and incidents. *If it does this, then the element of distrust is removed, and the object of the statute is accomplished.* [Emphasis added.]

The objection to the last sentence is that it creates the impression that, if corroborated, an accomplice's testimony should be believed rather than merely not distrusted as a matter of law. This ambiguity would be cured if the last sentence stated: "If it does this, then the object of the statute is accomplished, and the credibility of the accomplice's testimony should be evaluated in the same manner as the testimony of other witnesses." [15]

## DESTRUCTION OF EVIDENCE

Donald Mack confessed to the police several hours after he and Oksoktaruk were arrested. The confession was taped, the tape was transcribed, and the tape was then destroyed. According to the state, this was routine procedure. The confession was not made an exhibit at trial, nor did the jury hear any part of its contents. It was not used to refresh Mack's recollection on the

witness stand although he admitted reading the transcription prior to the trial. With the agreement of defense counsel, and only for the limited purpose of negating an inference of recent fabrication created by the cross-examination, the prosecution was permitted to establish the general fact that a statement had been made, and to ask two questions:

Q. [I]f we were to ask you to sign it right now after having . . . an opportunity to review it, would you be willing to sign it?

A. Most likely.

.      .      .      .      .

Q. [A]s the statement was given on the night in question, was it accurate with respect to what your observations and intent were?

A. I believe so.

We discern no problems of a constitutional dimension in this use of the transcription. Oksoktaruk was not deprived of his right "to be confronted with the witnesses against him . . . ." [16] The tape recording itself was not used against him in any way. Since both the making of the statement and the assertion that it was consistent with the testimony at trial were established through Mack's live testimony, there was no diminution in Oksoktaruk's opportunity to cross-examine the source of that evidence. *See Loveless v. State,* 592 P.2d 1206, 1211–12 (Alaska 1979); *Catlett v. State,* 585 P.2d 553, 557 (Alaska 1978). Moreover there is simply no indication in the record that the transcription with which the defendant was provided deviated in any material way from the statement actually made to the police.[17]

15. The trial judge believed that taken together instructions 21(a) and 21(b) created no ambiguity. Instruction 21(a) provided:

It is the law that the testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case.

We find the net effect of the two instructions confusing, however.

16. U.S.Const. amend. VI; Alaska Const. art. I, § 11.

17. Mack testified at the omnibus hearing in this case, at which time he was still a co-defendant and had not pled guilty, and fully acknowledged volunteering the statement in which he implicated both himself and Oksoktaruk. He was questioned about the several times the

For similar reasons, neither are we convinced by the defendant's compulsory and due process [18] claim that he was deprived of evidence that " 'might have led the jury to entertain a reasonable doubt about defendant's guilt.' " *Catlett*, 585 P.2d at 557 (citation omitted). Though the tone of the live statement might have contributed minimally to Oksoktaruk's argument to the jury that Mack concocted a story to save himself, the jury was informed on several occasions that Mack had a strong self-interest in cooperating with the state. *See Braham v. State*, 571 P.2d 631, 647 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978).

Nonetheless, it is clear, and the state concedes, that the routine destruction of the tape recording violated the spirit of Criminal Rules 16(b)(1)(i) and (iii), which require the prosecution to produce any "recorded statements" made by a co-defendant or anyone with relevant knowledge. *See Catlett*, 585 P.2d at 558 n.5. *See also Braham*, 571 P.2d at 643–44; *Torres v. State*, 519 P.2d 788, 797 (Alaska 1974). Law enforcement agencies are expected to preserve such tape recordings, and our courts should critically examine excuses given for destruction.

The conviction is REVERSED.

RABINOWITZ, C. J., not participating.

BURKE, Justice, dissenting in part.

I believe the evidence of Oksoktaruk's commission of a prior burglary was admissible to show that he entered Kelly's Photo Lab with the intent to steal, given the details of the earlier burglary. Thus, I disagree with the majority's conclusion that the superior court committed reversible error when it allowed the state to introduce that evidence. The court carefully weighed its probative value against its prejudicial effect and concluded that the evidence should be admitted, if accompanied by a limiting instruction, that was later given, allowing the jury to consider it only for the purpose of determining whether the accused acted wilfully and with the specific intent to steal. In light of the other evidence in the case, I am unable to say that the court erred in reaching that conclusion.

---

tape recorder was turned off during his interrogation, and replied that this occurred only when he was having difficulty understanding the questions being put to him. Mack also candidly admitted that his confession was predicated in large part on the hope that he would receive a lighter sentence if he cooperated. The transcription of the tape recording contains a promise by the police to note Mack's cooperation. Mack stated that this portion of the transcription reflects the only "deal" he discussed with the police.

18. U.S.Const. amends. VI and V, respectively; Alaska Const. art. I, §§ 11 and 7, respectively.