**Charles COLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-1505.**

Court of Appeals of Alaska.

May 6, 1988.

---

Sen K. Tan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Charles Cole was convicted, following a jury trial, of murder in the first degree, AS 11.41.100(a)(1), and robbery in the first degree, AS 11.41.500(a)(1). Superior Court Judge Mark C. Rowland sentenced Cole to consecutive sentences totaling sixty-seven years' imprisonment with thirty years suspended. Cole appeals his convictions, arguing that his indictment for murder in the first degree was based upon insufficient evidence, that the trial court erred in refusing to grant his motion for judgment of acquittal, and that the trial court erred in admitting evidence of prior bad acts. We affirm.

## FACTS

At trial, Cole testified that on April 3, 1985, he and Mathew Decker went to downtown Anchorage. They were trying to sell some imitation drugs. In the Raven, a gay bar, Decker struck up a conversation with one of the patrons, Ray Barker. The bartender, thinking Decker looked underage, asked him for some identification. When Decker could not prove his age, the bar-

tender asked him to leave. Decker arranged for Barker to meet him at the Jade Room, another gay bar. Decker and Cole left the Raven together.

Cole testified that, on their way back to the Jade Room, Decker told Cole that he would try to get Barker to invite them to stay the night at Barker's house. According to Cole, Decker told him they would then steal Barker's property while he was asleep. They met Barker at the Jade Room. Barker subsequently invited both of them to his house for dinner.

Cole testified that, during dinner, Decker ate quickly. Decker then got up from the table and said he was going to the front room to get his beer. Decker returned carrying a large wooden burl. Without warning, Decker struck Barker on the head. The blow knocked Barker to the floor. When Barker moaned and tried to get up, Decker hit him again. Decker asked Cole to get something with which to tie Barker up, and also asked Cole to cut the telephone cord.

According to Cole, he cut the telephone cord and then cut some rope he found on the back porch. When Cole got back to the dining room, Barker was lying face down on the floor with a rug over his head. Decker told Cole that they no longer needed the rope because Barker was "knocked out." Cole testified that he became nauseated when he saw the blood on the floor. Decker and Cole took a television set then drove away in Barker's truck.

An acquaintance of Barker's discovered the body around 8:00 p.m. and called the police. Barker had suffered five major blows to the head. The pathologist testified that an immediate call for medical attention might have saved Barker's life.

Later in the evening, Cole and Decker met a friend, Robert Britton. Britton testified that Cole and Decker talked to him about having robbed an older man and having stolen his truck. The next morning, Britton and his wife saw a newspaper article about Barker's murder. They recog-nized that it was the crime Cole and Decker had described the previous night. Britton called the police and reported what Cole and Decker had told him.

The police asked Britton to wear a transmitting device and talk to Cole and Decker in an attempt to obtain recorded admissions about the murder. A warrant was obtained to allow Britton to wear a transmitting device. *See State v. Glass*, 583 P.2d 872 (Alaska 1978). Cole and Decker subsequently described their actions to Britton in some detail.

## SUFFICIENCY OF THE INDICTMENT

Before trial,[1] Cole twice moved to dismiss the indictment. He claimed there was insufficient evidence to sustain the first-degree murder charge. The first motion was denied by Superior Court Judge James A. Hanson, and Judge Rowland denied the second motion. On appeal, Cole argues that he could not be indicted as a principal for first-degree murder because he did not strike the blows that killed Barker. He also argues that he is not liable as an accomplice because he did not intend to aid or abet Barker's death.

Alaska Statute 11.16.110(2) provides that a person is legally accountable for the conduct of another constituting an offense if:

(2) with intent to promote or facilitate the commission of the offense, the person

(A) solicits the other to commit the offense; or

(B) aids or abets the other in planning or committing the offense[.]

Cole contends that the evidence presented to the grand jury was insufficient to establish that Cole had an intent to facilitate the death of Barker. He argues that only the surreptitious tape-recording of Britton's conversation with Decker and Cole provided any insight into the culpable mental states of the participants, and that this evidence is exculpatory. In certain passages of the tape, Decker said that he did

---

1. Cole and Decker were tried separately. Decker eventually pled *nolo contendere* to first-de-    gree murder.

not hit Barker with full force. In one part, Decker and Cole seemed to doubt that Barker had in fact been killed. In another part, Cole stated to Britton that Barker was merely "gonna have a concussion or something." The most that can be inferred from the evidence, according to Cole, was that there was a plan to knock Barker unconscious, and his death was the result of a badly planned robbery.

The standard for sufficiency of evidence to support an indictment is whether "all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." Alaska R.Crim.P. 6(q); *See also State v. Parks*, 437 P.2d 642, 644 (Alaska 1968). Even where specific intent is an element of a crime, intent may be proved by circumstantial evidence. *Siggelkow v. State*, 648 P.2d 611, 613 (Alaska App.1982). The supreme court has approved jury instructions that state "[i]t is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done...." *Gipson v. State*, 609 P.2d 1038, 1042 (Alaska 1980).

■ All the evidence before the grand jury, taken together, could reasonably support the inference that Decker intended to kill Barker, and that Cole intended to promote or facilitate Barker's death. The grand jury need not believe Decker's and Cole's after-the-fact comments to Britton expressing their doubts about Barker's death. A forensic pathologist testified that Barker suffered five severe blows to his head. Decker admitted to Britton that he struck Barker multiple times with a wooden club. The cause of death was brain damage due to the blows. Cole joined in by cutting some rope and cutting the phone lines. From the physical evidence and the surrounding circumstances of the offense, the grand jury could reasonably infer that Decker and Cole had planned to kill Barker. Accordingly, we find sufficient evidence to reasonably warrant a conviction of Cole for murder in the first degree.

## MOTION FOR JUDGMENT OF ACQUITTAL

The state's evidence at trial was not substantially different from the evidence presented to the grand jury. At the close of the state's case, and again after the defense rested, Cole moved for a judgment of acquittal on the first-degree murder count. Cole argued that there was no plan to intentionally kill Barker. Both motions were denied.

In determining whether to grant a motion for a judgment of acquittal, the trial court must decide whether reasonable minds could conclude that guilt had been established beyond a reasonable doubt. *Hentzner v. State*, 613 P.2d 821, 823 (Alaska 1980); *Gipson*, 609 P.2d at 1040. The evidence and inferences therefrom are viewed in the light most favorable to the state. *Siggelkow*, 648 P.2d at 613; *Gray v. State*, 463 P.2d 897, 905 (Alaska 1970). The same standard applies to review by an appellate court. *Hentzner*, 613 P.2d at 823; *Gipson*, 609 P.2d at 1040.

■ Intent is a question for the jury. The jury could reject Cole's testimony that there was no plan to kill Barker. Similarly, the jury did not need to accept at face value Cole's recorded statement expressing doubt regarding Barker's death. The jury could make its decision based on the physical evidence and surrounding circumstances. Therefore, for reasons similar to those supporting our decision on the indictment issue, when the evidence is viewed in the light most favorable to the state, the case was sufficient to go to the jury.

## PRIOR BAD ACTS

Cole was charged with robbery in the first degree. In his opening statement, Cole's defense counsel admitted that Decker had engaged in theft in the past, but he did not admit that Decker and Cole had also committed robberies. This statement seemed to imply that Decker had not used force to steal in the past. Cole would therefore be able to argue that he could not be implicated in any robbery plan because he could not know that Decker intended to rob Barker on the night he was killed since Decker had not used force in the past.

During its case-in-chief, the state called Britton as a witness to rebut this inference. Immediately prior to Britton's testimony, however, Cole moved for a protective order concerning any evidence of prior bad acts. The trial court, however, ruled that the prior bad acts evidence was admissible.

Britton testified that Decker and Cole had previously employed a scheme to take money from gay men. Decker would go inside a gay bar and convince a customer to leave with him. Cole would wait outside. Once Decker and the patron were outside the bar, Decker and Cole would "physically take [the patron's] money." Britton testified that Cole had told him that they had done this "a few times."

Britton also testified that, about two weeks before Barker's murder, Cole asked him to participate in a similar robbery. A third person was supposed to go into the Jade Room, pick up a patron, and Britton and Cole, waiting in a nearby park, would assault and rob the patron. After waiting twenty minutes, the third person failed to come back with a gay man, so Britton and Cole left.

Cole claims that Britton's testimony was not relevant to show that Cole had specific knowledge or an intent to rob Barker because the prior bad acts and the present charge were not sufficiently similar. Furthermore, Cole argues that the attempted robbery scenario is so different and distinguishable from the Barker homicide that it could only be used to create the impermissible propensity inference that inasmuch as Cole had participated in robbing people in the past, he must be guilty of the present charge. Finally, Cole argues that any probative value of the prior bad acts is outweighed by the presumed highly prejudicial impact of the evidence.

The exclusionary provision of Evidence Rule 404(b)[2] represents the "presumption in our law that the prejudicial effect of introducing a prior crime outweighs what

probative value may exist with regard to propensity." *Oksoktaruk v. State*, 611 P.2d 521, 524 (Alaska 1980). When, however, a prior bad act is relevant to a material fact other than propensity, the court may admit the evidence if its probative value outweighs the possible prejudicial impact. A.R.E. 403. *Lerchenstein v. State*, 697 P.2d 312, 315 (Alaska App.1985), *aff'd*, 726 P.2d 546 (Alaska 1986).

The trial court's inquiry is two-fold. First, the court must determine that the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence. *Freeman v. State*, 486 P.2d 967, 977–79 (Alaska 1971); *Lerchenstein*, 697 P.2d at 315–16.

■ We find that the opening statements by Cole's counsel, implying that Decker had not engaged in robbery in the past, opened the door for the state to use Britton's testimony. Britton's testimony was relevant to prove Cole's knowledge of Decker's plan to rob Barker. Cole's knowledge was relevant to the issue of whether he aided and abetted with the intent to facilitate a robbery, and not merely a nonviolent theft. Furthermore, the prior misconduct was similar to the charged offense (robbery of gay bar patrons by force), and the prior misconduct was not too remote in time (only a few weeks to a few months old). Therefore, unlike the situation presented in *Oksoktaruk*, 611 P.2d at 525 (nexus between burglary of fur store and alleged burglary of photo lab two years later does not meet demanded standard of relevance), Cole's and Decker's prior acts are "so related to the crime charged in point of time or circumstance that evidence thereof is significantly useful in showing the defendant's intent in connection with the crime charged." *Id.*, (quoting 1 C. Torcia, *Wharton's Criminal Evidence*, § 245, at 556 (13th ed. 1972)).

2. Alaska Rule of Evidence 404(b) provides:
   (b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The question of unfair prejudice is left to the trial court's discretion, and reversal is required only if the trial court has abused its discretion. *Ladd v. State,* 568 P.2d 960, 968 (Alaska 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978). The evidence was probative of Cole's intent to facilitate the robbery of Barker. The evidence was not the type, however, to arouse the jury to "overmastering hostility." *Adkinson v. State,* 611 P.2d 528, 532 (Alaska), *cert. denied,* 449 U.S. 876, 101 S.Ct. 219, 66 L.Ed.2d 97 (1980). Accordingly, we find that the trial court did not abuse its discretion in admitting Britton's testimony.

The judgment of the superior court is AFFIRMED.