James **CALLAHAN**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–2465.

Court of Appeals of Alaska.

Feb. 24, 1989.

---

**445**

Susan Downie, Asst. Public Defender, Fairbanks, and John Salemi, Acting Public Defender, Anchorage, for appellant.

Gayle L. Garrigues, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

A jury convicted James Callahan of refusal to submit to a breath test, AS 28.35.-032. Callahan appeals his conviction. We reverse.

While on routine patrol during the early morning hours of October 13, 1987, Fairbanks Police Officer Larry Layman observed Callahan's vehicle run a red light. Layman stopped Callahan and directed him to perform a heel-to-toe test. Callahan began to perform the test but ran away without completing it. Officer Layman gave chase and, with the assistance of another officer, arrested Callahan after a brief scuffle. At the police station, Callahan refused to take the Intoximeter test.

At trial, Callahan testified that he declined to take the Intoximeter test on the date of his arrest because the nose and chest injuries he sustained during his scuffle with the police prevented him from blowing into the Intoximeter tube. Callahan testified that he would have been willing to take the Intoximeter test if he had not injured himself. In response to Callahan's assertion, the state elicited testimony from Callahan about one prior and one subsequent act of refusal. The state asked Callahan whether in 1981 he had refused to submit to an Intoximeter test when requested to do so by a police officer. Callahan responded in the affirmative. The state then asked Callahan if he had refused to submit to an Intoximeter test in December 1987—approximately two months after his arrest for the current offense. Callahan denied that he had refused on that occasion. The state subsequently called Officer Leonard Brown to testify that Callahan had in fact been uncooperative about taking the Intoximeter test on that date.

Over defense objection, the trial court admitted the evidence about the prior and subsequent acts of refusal. The court concluded that the evidence was relevant to Callahan's veracity and that the probative value of the evidence outweighed its prejudicial impact. The court limited the state's inquiry, however, to Callahan's specific acts of refusal; questions about prior or pending convictions were prohibited.

On appeal, Callahan challenges the court's admission of the evidence. In Callahan's view, evidence of the prior and sub-

sequent acts of refusal constituted inadmissible propensity evidence in contravention of Alaska Rule of Evidence 404(b).

■ Under Alaska Rule of Evidence 404(b) [1], character evidence is generally inadmissible to prove that someone acted in conformity with that character trait. Prior bad acts, however, may be admissible if they are relevant to a material fact other than propensity and the court decides that the evidence is more probative than prejudicial. *Lerchenstein v. State*, 697 P.2d 312, 315 (Alaska App.1985), *aff'd*, 726 P.2d 546 (Alaska 1986); A.R.E. 403.

■ At trial, Callahan testified that he would have been willing to submit to an Intoximeter test but for his nose and chest injuries. Evidence of Callahan's refusal to submit to an Intoximeter test in 1981, coupled with his refusal to submit to an Intoximeter test two months after the commission of the current offense, was directly relevant to discredit Callahan's assertion. *See Srala v. Municipality of Anchorage*, 765 P.2d 103, 105 (Alaska App.1988) (where DWI suspect refused to take an Intoximeter test, evidence of suspect's subsequent refusal to take a blood test on the same date was relevant to discredit his assertion that he would have taken the Intoximeter test but for his nose injury); *Oksoktaruk v. State*, 611 P.2d 521, 525 (Alaska 1980) (the nexus between a prior burglary of a fur store and an alleged burglary of a photo lab two years later did not meet the standard of relevance for admission). The trial court did not abuse its discretion in concluding that, for this purpose, the probative value of the evidence outweighed the potential for prejudice.

■ Callahan next contends that the court abused its discretion when it precluded defense witness Paula Dykes from testifying. In an offer of proof in the trial court, Dykes testified that she drove Callahan to the hospital for an examination the day after his arrest and later took photographs of Callahan's injuries. Callahan sought to introduce the photographs into evidence through Dykes and to elicit testimony from Dykes about her observations of Callahan's injuries. Callahan wished to establish that he sustained injuries to his chest, back, and ribs and that these injuries interfered with his ability to blow into the Intoximeter tube. The court ruled that Dykes would not be permitted to testify on the ground that she did not qualify as a "medical person." Callahan appeals the ruling. In Callahan's view, Dykes' testimony was both relevant and the proper subject for lay opinion testimony.

Rule 401 of the Alaska Rules of Evidence defines relevance as follows:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

In order to be admissible at trial, a lay witness's testimony must be "rationally based on the perception of the witness and ... helpful to a clear understanding of his testimony or the determination of a fact in issue." A.R.E. 701.

There can be no question that Dykes' testimony met the standards found in each of these rules. Dykes' testimony about Callahan's injuries was based on her own observations. Her testimony constituted relevant circumstantial evidence of the possibility that Callahan's injuries prevented him from taking the Intoximeter test. *See Denison v. Anchorage*, 630 P.2d 1001, 1003 (Alaska App.1981) (defense witnesses' testimony about defendant's sobriety and the amount of alcohol she had consumed prior to her arrest for DWI was relevant circumstantial evidence that defendant's breathalyzer result was incorrect). The photographs of Callahan's injuries were likewise relevant circumstantial evidence of the pos-

---

**1.** Alaska Rule of Evidence 404(b) provides as follows:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

sibility that Callahan's injuries interfered with his ability to take the breathalyzer test. Moreover, Dykes, who was responsible for taking the photographs, was the proper person to authenticate them for admission. *See* A.R.E. 901. We therefore conclude that the trial court abused its discretion when it declined to allow Dykes to testify.

■ We further conclude that the court's error was not harmless for several reasons. We cannot say that Dykes' testimony would have had no probable effect on the jury's verdict; the jury may well have determined from her testimony that Callahan's injuries prevented him from taking the Intoximeter test. *See Love v. State,* 457 P.2d 622, 631 n. 15 (Alaska 1969). We note that the evidence against Callahan was not overwhelming and that the jury apparently viewed this as a close case. Callahan was tried for DWI, resisting arrest and refusal to submit to a chemical test of his breath, but convicted only of the latter charge. In addition, neither Dykes' testimony nor the photographs constituted cumulative evidence. Although there was evidence presented at trial that Callahan had a bloody nose, there was no evidence presented regarding injuries to his chest. Finally, there can be no question that the issue of Callahan's injuries was important to the state's case. During closing arguments, the state argued that Callahan's claim that his injuries prevented him from blowing into the Intoximeter tube was without foundation. The district court's exclusion of Dykes' testimony therefore constituted reversible error.

The conviction is REVERSED.