Rudy PAVLIK and Thomas Schmidt, Appellants,

v.

STATE of Alaska, Appellee.

Nos. A–4767, A–4768.

Court of Appeals of Alaska.

March 11, 1994.

Rehearing Granted in Part and Opinion Amended April 11, 1994.

Walter Share, Seattle, Jeffrey M. Feldman, Young, Sanders & Feldman, and Michael J. Keenan, Anchorage, for appellants.

Thomas E. Wagner, Asst. Dist. Atty., and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

*OPINION*

BRYNER, Chief Judge.

Rudy Pavlik and Thomas Schmidt were convicted, following a joint jury trial, of operating more than one set net each in violation of 5 Alaska Administrative Code (AAC) 30.-331(a)(1)(H). On appeal, they argue that the evidence at trial was insufficient and that the trial court erred in admitting evidence of prior misconduct. We reverse and remand for a new trial.

On September 17, 1991, Fish and Wildlife Officer Robert Beasley and Park Ranger Alan Peck were conducting surveillance along the banks of the Spoon River, in the Yakutat District. As Beasley and Peck watched from hiding, they saw Pavlik, Schmidt, and a third man, John Matsko, in a skiff. Four set nets had been deployed in the river near the skiff; no one else was in the area.

From their vantage point, Beasley and Peck observed the men remove three of the four nets from the water, pick fish from them, and replace them in the river. The officers' view of the fishing activities at two of these nets was unobstructed; their view of the third was partially obstructed, but the officers saw enough to enable them to testify that the three men appeared to be picking fish from the net and "were operating that net for sure." As the officers continued to watch, the men drove the skiff toward the fourth net, which was out of view. By the time the officers made their way to a point where the fourth net would have been visible, the skiff had already departed and the net was gone.

Beasley and Peck were able to determine that Pavlik and Schmidt each had a permit for one set net, but Matsko had only a crew member's license. Based on their observations, the officers charged Pavlik and Schmidt with operating more than one set

net each, in violation of 5 AAC 30.-331(a)(1)(H).

Pavlik and Schmidt first argue that the evidence was insufficient to prove that they fished more than the one net each for which they had permits. They suggest that the evidence left open the possibility that someone else might have operated the net at which their skiff was never actually seen, and that the officers' limited and partially obscured observations of their activities at one of the other three nets left open the possibility that they had only manipulated that net to get their skiff past it.

■ In considering a motion for judgment of acquittal, however, the trial court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the state. The motion must be denied if the court determines that fair-minded jurors in the exercise of reasonable judgment could differ on the question of whether guilt had been established beyond a reasonable doubt. *Des Jardins v. State*, 551 P.2d 181, 184 (Alaska 1976); *Snyder v. State*, 661 P.2d 638, 641 (Alaska App.1983). The same standard applies whether the evidence of guilt is direct or circumstantial. *Des Jardins*, 551 P.2d at 184; *Snyder*, 661 P.2d at 641.

■ In arguing that the evidence below was insufficient to establish their guilt, Pavlik and Schmidt mistakenly construe the evidence in the light most favorable to their own case and implicitly suggest that circumstantial evidence cannot support a finding of guilt. Our review of the record convinces us that fair-minded jurors considering the totality of direct and circumstantial evidence in the light most favorable to the state could reasonably conclude that the state had met its burden of proving guilt beyond a reasonable doubt. The trial court did not err in finding sufficient evidence to submit the case to the jury.

Pavlik and Schmidt separately argue that the trial court abused its discretion in admitting evidence of prior bad acts at trial. Over Pavlik and Schmidt's objections, the trial court allowed Beasley to testify that his pres-

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

ence with Beck at the Pavlik family's Spoon River fishing site was prompted by a report that the Pavliks had fished illegally there the previous year. Beasley testified that a former crew member of the Pavliks had reported to the state troopers that during the 1990 fishing season the Pavliks had repeatedly engaged in illegal fishing practices similar to those charged in this case.

The trial court ruled that this evidence was relevant to explain the officers' presence in the area and was not unduly prejudicial. On appeal, Pavlik and Schmidt dispute this ruling, arguing, as they did below, that the evidence of prior bad acts was inadmissible under Alaska Rule of Evidence 404(b). Under Rule 404(b)(1),

> Evidence of other crimes ... is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule has consistently been interpreted to require exclusion of prior bad acts evidence unless it is relevant to a material fact other than propensity. *Oksoktaruk v. State*, 611 P.2d 521, 524 (Alaska 1980); *Lerchenstein v. State*, 697 P.2d 312, 315 (Alaska App.1985), *aff'd*, 726 P.2d 546 (Alaska 1986).[1]

Here, the trial court admitted the disputed evidence to explain the officers' presence in the area of the Pavlik family's fishing site. Yet evidence explaining the officers' presence at the site had no direct bearing on any element of the offenses charged; nor did such evidence tend to advance any other issue that was actually in dispute. Significantly, Pavlik and Schmidt alleged no bias or impropriety on the part of the officers stemming from their presence at the Spoon River fishing site. Quite to the contrary, Pavlik and Schmidt specifically offered to stipulate that the officers were properly in the area to look for possible fishing violations.

The state argues that the disputed evidence also might have been admissible to show preparation, plan, knowledge, identity or absence of mistake or accident. But the trial court did not address or rely on these alternative rationales. Nor does it appear that they could conceivably have applied. Preparation and identity were not disputed issues at trial. Neither did Pavlik and Schmidt place their intent in issue: they did not claim accident, mistake or lack of knowledge. And while evidence of prior similar crimes will always be relevant to establish the possibility of a common scheme or plan in the broad sense—that is, in the sense of showing the defendant's general willingness to engage in an ongoing pattern of similar criminal acts—proof of a common scheme or plan will itself have no material value unless it tends to elucidate identity or intent, or to establish some other disputed point apart from the defendant's general tendency to commit similar crimes. Standing alone, the mere showing of a tendency to commit similar crimes amounts to nothing more than the inference of propensity prohibited under A.R.E. 404(b)(1). *See Velez v. State*, 762 P.2d 1297 (Alaska App.1988).

Here, the disputed testimony had no relevance to any issue actually in dispute and could only have served to establish Pavlik and Schmidt's propensity for criminal misconduct. Admission of this evidence was barred under A.R.E. 404(b)(1). In the context of the present case, the error in admitting this evidence cannot be dismissed as harmless. The evidence against Pavlik and Schmidt, though legally sufficient to support their convictions, was not overwhelming. Moreover, in his closing argument, the prosecutor actively encouraged the jury to use the report of prior misconduct as propensity evidence. Responding to defense counsel's argument that the evidence as a whole showed only that the defendants had been present at the scene, the prosecutor argued:

> It's not just that they happen[ed] to be there. This is what was happening here. These three gentlemen were working together conducting this entire illegal fishing operation at night. That was what the troopers went over there to investigate. They had a report that this is what was

---

1. *Oksoktaruk* and *Lerchenstein* were decided under the originally enacted version of A.R.E. 404(b) and construed the provision as a rule of exclusion. In 1991, the Alaska legislature amended A.R.E. 404(b), recharacterizing it as a rule of inclusion rather than exclusion. Ch. 79, § 1(c) SLA 1991. Although the present case is governed by the amended version of the rule, the state has not argued that the 1991 amendment would have any significance in the factual circumstances presented here. We have no occasion to consider the extent to which the 1991 amendment to A.R.E. 404(b) might affect the continuing validity of *Oksoktaruk* and *Lerchenstein* in other factual settings.

 

happening at night at this site, and they went over there to investigate, and that's what happened. And then daytime comes, or flying weather improves, everything's taken out and one legal net is left.

We cannot fairly say that the improper admission of evidence of prior illegal fishing did not appreciably affect the jury's verdict. *See Love v. State*, 457 P.2d 622, 632 (Alaska 1969).

The judgments of conviction against Pavlik and Schmidt are REVERSED.

MANNHEIMER, J., not participating.