*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRETT CONLEY and MARINA CONLEY, | ) ) ) | |
| | ) | Supreme Court Nos. S-14194/14213 |
| Appellants and Cross-Appellees, | ) ) ) | |
| | ) | Superior Court No. 3AN-09-04739 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA COMMUNICATIONS SYSTEMS HOLDINGS, INC., | ) ) ) | |
| | ) | No. 6910 - May 9, 2014 |
| Appellee and Cross-Appellant. | ) ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Michael W. Flanigan, Flanigan & Bataille, Anchorage, for Appellants and Cross-Appellees. Richard W. Maki and David H. Shoup, Tindall Bennett & Shoup, P.C., Anchorage, for Appellee and Cross-Appellant.

Before: Fabe, Chief Justice, Winfree, Stowers and Maassen, Justices. [Carpeneti, Justice, not participating.]

WINFREE, Justice.
FABE, Chief Justice, dissenting.

I.     INTRODUCTION

A tractor-trailer driver was injured while unloading cargo. The driver sued the receiving company for damages, arguing that the company negligently trained its

forklift operator, the operator was negligent, and the operator caused his injuries. A jury found the company was negligent, but also found that the negligence was not a substantial factor in causing the driver's injuries. The driver appeals, arguing that the superior court erred by admitting propensity evidence regarding his safety record; denying a res ipsa loquitur instruction; and denying motions for directed verdict, judgment notwithstanding the verdict, and a new trial. We affirm the superior court's rulings.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 2007 Brett Conley drove a tractor-trailer for Lynden Transport, Inc. While working for Lynden, Conley delivered two reels of innerduct to the Alaska Communications Systems (ACS) equipment yard in Anchorage. Danisa Rudolph, an ACS warehouse employee, operated the forklift to unload the reels from the Lynden trailer. ACS protocol called for Rudolph, as the forklift operator, to hold a "toolbox meeting" with Conley to advise him how she intended to conduct the lift and what his role would be. Rudolph did not hold the meeting.

Conley signaled Rudolph to begin unloading. Rudolf placed the forks under one of the reels on the trailer and lifted the reel, but it is unclear whether she fully tilted the load back so that the reel would rest against the forklift mast. Conley signaled Rudolph to back up. She backed up approximately six to eight feet and began lowering the reel to the ground.

Conley signaled Rudolph to stop and he began removing the chain that ran through the reel's opening back to the trailer. Despite having been trained not to do so, Conley stepped in front of the reel while removing the chain. As Conley pulled the chain, the reel began to tilt toward him. He tried to steady the reel, but it was too big; as he turned around to get out of the way, the reel fell onto his lower back. Conley suffered

three fractured ribs, a punctured lung, a chipped hip socket, and several broken lumbar vertebrae.

Following the incident Conley appeared to experience neurological symptoms. He was referred to a neurologist, was diagnosed with a motor neuron condition called Amyotrophic Lateral Sclerosis (ALS, or Lou Gehrig's disease), and was given a prognosis of 18 to 36 months to live. But when Conley began improving, he was referred to another neurologist for a second opinion. That neurologist concluded Conley did not have ALS, but instead had a trauma-induced motor neuron syndrome caused by the accident.

## B.    Proceedings

Conley[1] sued ACS and Rudolph, alleging that Rudolph had negligently operated the forklift and that ACS had negligently failed to provide Rudolph adequate equipment and training. ACS filed a third-party complaint against Lynden, seeking fault allocation and damages apportionment based on Lynden's negligent training and retention of Conley as an employee. The parties agreed ACS could dismiss its third-party claim against Lynden while still allowing the jury to consider allocation of fault to Lynden. The parties also stipulated to dismiss Conley's claims against Rudolph.

Conley filed a pretrial motion in limine to exclude evidence relating to "[p]rior work incidents or write-ups [involving Conley's work at Lynden] unrelated to the facts of this accident" and filed a written objection to ACS's proposed Trial Exhibit 2035, a compilation of Conley's write-ups for past misconduct and accidents while working for Lynden. ACS responded that the evidence was relevant to Lynden's negligence in retaining Conley and to the cause of the motor neuron disease. In reply, Conley's primary arguments were that ACS's negligence was a superseding cause

---

[1]    Marina Conley, his wife, joined him in bringing suit.

negating the relevance of any of his previous work-related incidents and that any prior incident unrelated to the accident at ACS was not relevant. The superior court denied the pretrial motion without comment. Conley did not object when ACS referred to the evidence during opening statements, used the evidence while examining witnesses during trial, and referred to the evidence during closing arguments. When ACS moved to admit Exhibit 2035 during trial, Conley's attorney stated, "[n]o objection." At no time before or during trial did Conley request an instruction to the jury that the evidence be considered for limited purposes.

At the close of trial, Conley moved for a directed verdict that he had "established that the accident caused his back injury, [and] his orthopedic injuries," and that he was "entitled to any damages connected to those injuries." The superior court denied the directed verdict motion.

Conley requested a jury instruction based on the res ipsa loquitur doctrine, providing that the jury could infer ACS was negligent if Conley demonstrated that "(1) the event that caused the harm does not ordinarily happen unless someone is negligent, [and] (2) the harmful event was caused by something that was under the defendant's exclusive control." ACS opposed the proposed instruction, arguing that res ipsa loquitur was inapplicable because each party offered a complete explanation of the accident and that Conley's proposed instruction omitted the third element: proof the plaintiff did not contribute to or cause the accident. The superior court refused to issue the instruction, reasoning that the third element was not met in light of evidence that Conley's negligence could have contributed to the accident.

The jury returned a special verdict finding that ACS was negligent, but that ACS's negligence was not a substantial factor in causing Conley's harm. Conley moved for judgment notwithstanding the verdict (JNOV) and a new trial on all issues other than negligence. The superior court denied both motions.

-4- **6910**

Conley appeals, arguing that it was error to admit evidence of his past work-related incidents; to reject the res ipsa loquitur instruction; and to deny the motions for a directed verdict, JNOV, and new trial. ACS cross-appeals a number of the superior court's evidentiary rulings, but, because we affirm the judgment, we do not reach ACS's cross-appeal issues.

## III. DISCUSSION

### A. Evidence Of Conley's Past Incidents

Conley filed a pretrial motion in limine for a protective order barring evidence of past incidents at Lynden and filed a written objection to Trial Exhibit 2035, a compilation of write-ups of Conley's work-related misconduct and accidents. The write-ups documented that Conley: (1) slipped on ice while working; (2) exhibited abusive behavior toward a supervisor; (3) took excessive breaks and was not performing quickly enough; (4) dropped a heavy metal dock plate on his foot and in a fit of anger threw a hammer; (5) ran a forklift into a sprinkler system, causing $500 in damages; and (6) forgot to load three items onto a delivery truck.

Conley argued the evidence was inadmissible because it was irrelevant and unrelated to the dissimilar accident at issue,[2] it was evidence of prior bad acts to prove character,[3] and its probative value was outweighed by the danger of unfair prejudice,

---

[2]    *See* Alaska R. Evid. 402 ("Evidence which is not relevant is not admissible."); *cf.* Alaska R. Evid. 401 ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

[3]    *See* Alaska R. Evid. 404(b)(1) ("Evidence of other . . . acts is not admissible if the *sole purpose* for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith.") (emphasis added).

confusing the issues, misleading the jury, or causing undue delay.[4] ACS opposed the motion, arguing that the evidence was relevant to whether Lynden negligently retained Conley as an employee and to whether Conley suffered motor neuron disease symptoms prior to the accident, and that the evidence was more probative than prejudicial. The superior court denied the pretrial motion without explanation. The court was not required to explain its ruling,[5] and we assume the court accepted ACS's arguments that: (1) the evidence would not be offered solely for propensity purposes,[6] but rather as support for its theories that Lynden was negligent and at least partly responsible for the accident and that Conley showed motor neuron disease symptoms prior to the accident; and (2) the evidence was more probative than prejudicial.[7] Conley did not request a limiting instruction — although it seems apparent he would have been entitled to one had he requested it — restricting the use of the evidence only to ACS's claims that Lynden was negligent and that Conley showed motor neuron disease symptoms before the accident, and not to ACS's claim that Conley himself was negligent.[8]

---

[4] *See* Alaska R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

[5] *See* Alaska R. Civ. P. 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions . . . except as provided in Rule 41(b).").

[6] *Cf. supra* note 3.

[7] *See, e.g., Hoekzema v. State*, 193 P.3d 765, 771 (Alaska App. 2008) ("[The judge] offered no explanation for his ruling. We therefore presume that the judge adopted the prosecutor's argument . . . .").

[8] *See* Alaska R. Evid. 105:

When evidence which is admissible as to one party or for one

(continued...)

Conley did not object or request a limiting instruction when ACS referred to the evidence during opening statements, and he did not object or request a limiting instruction when ACS actually used the evidence with witnesses. When ACS moved to admit Exhibit 2035 into evidence, Conley's attorney stated, "[n]o objection" without requesting a limiting instruction. Conley did not object or request a limiting instruction when ACS referred to the evidence during closing arguments.

On appeal Conley argues that the evidence was inadmissible propensity evidence not offered for a proper purpose and that its probative value was outweighed by the danger of unfair prejudice.[9] Conley asserts that ACS's actual use of the evidence for propensity purposes demonstrates that denying his pretrial motion was not harmless error. ACS responds that the superior court did not abuse its discretion by denying the pretrial motion in limine and that Conley failed to preserve for appeal the issue of how the evidence was used at trial because he neither objected nor requested a limiting

---

[8]    (...continued)
purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly. In cases tried to a jury, evidence inadmissible as to one party shall not be admitted as to other parties until the court has made all reasonable efforts to effectively delete all references to the parties as to whom it is inadmissible.

(Emphasis added.)

[9]    "We review a trial court's rulings on a motion in limine according to the underlying relief sought in the motion." *Heynen v. Fairbanks*, 293 P.3d 470, 474 (Alaska 2013). The relief sought in Conley's motion in limine — preclusion of evidence — generally calls for abuse of discretion review. *Id.* (citing *State v. Doyle*, 735 P.2d 733, 739-40 (Alaska 1987). But whether the trial court "applie[s] the correct legal standard is a question of law to which we apply our independent judgment." *Ayulak v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1194 (Alaska 2009).

instruction during trial. Conley replies that he had no obligation to object during trial because the superior court had previously denied his motion in limine to preclude the evidence. We agree with ACS.

Alaska Evidence Rule 404(b)(1) governs the admission of propensity evidence and provides: "Evidence of other . . . acts is not admissible if the *sole purpose* for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith." (Emphasis added.) That rule, however, also provides that evidence of prior acts may be admitted for a proper purpose, "including, *but not limited to*, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[10] (Emphasis added.) If a court determines such evidence is admissible for a proper purpose, Alaska Evidence Rule 403 then requires the court to weigh the probative value of the evidence against the danger of unfair prejudice.[11]

---

[10]    Alaska R. Evid. 404(b)(1).

[11]    *Cf. supra*, note 4; *see, e.g.*, *Ayuluk*, 201 P.3d at 1194-96. We review such balancing for abuse of discretion, *see, e.g.*, *id.* at 1194, and have stated that we review a Rule 403 decision by "balanc[ing] the danger of unfair prejudice against the probative value of the evidence 'to determine whether the potential danger predominated so greatly as to leave us firmly convinced that admitting the challenged evidence amounted to a clear abuse of discretion under . . . Rule 403.' " *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007) (quoting *Bluel v. State*, 153 P.3d 982, 987 (Alaska 2007)).

The dissent argues that Rule 404(b)(1) carries with it a presumption against the admissibility of prior bad acts for any purpose due to the potentially significant prejudicial impact. The dissent relies exclusively on pre-1991 Alaska criminal case law stating that Rule 404(b)(1) is a rule of exclusion, not inclusion, of evidence of prior crimes. *See, e.g.*, *Oksoktaruk v. State*, 611 P.2d 521, 524 (Alaska 1980); *Lerchenstein v. State*, 697 P.2d 312, 315 n.2 (Alaska App. 1985), *aff'd* 726 P.2d 546 (Alaska 1986). The dissent acknowledges the Legislature amended Rule 404(b) in 1991, and we note that the court of appeals has held the amendment transformed the rule from one of

(continued...)

The first question we must ask is whether the superior court erred by determining that the disputed evidence was relevant to ACS's two trial theories. ACS explained to the superior court that Conley stood out in terms of safety problems, that he violated safe working procedures, and that he performed slowly, "exhibit[ed] slurred speech, and would occasionally fall or stumble like he was intoxicated." ACS contended that some of this evidence was relevant to apportioning fault to Lynden "for negligently employing a driver who was either careless or unable to perform safely." ACS also contended that some of this evidence was relevant to the cause of Conley's motor neuron condition — noting motor neuron disease symptoms such as "[s]lowness and difficulty of movement, slurred speech and clumsiness, seemingly characteristic of drunkenness, and angry outbursts," ACS said it would use the evidence of Conley's records to show that his motor neuron disease predated the accident. ACS also noted that "[b]ecause of its effect on the body and motor coordination, people with ALS are prone to accidents." Further, ACS submitted an opinion from one medical doctor that "[t]he cause of ALS is . . . not known," and that "[t]he chance that ALS was actually caused by trauma in this case is exceedingly small." The doctor explained that "[Conley's] ALS quite possibly

---

**11**    (...continued)
exclusion to one of inclusion. *Pavlik v. State*, 869 P.2d 496, 498 n.1 (Alaska App. 1994); *see also Gehrke v. State*, Mem. Op. & J. No. 5685, 2011 WL 746459, at *4 n.10 (Alaska App. Mar. 2, 2011) ("[T]he rule regarding evidence of other crimes was regarded as a rule of *exclusion* . . . [and] the rule has since been amended to make it one of *inclusion*." (emphasis in original)). The dissent suggests that the rule change is limited to criminal cases and has no application in civil cases and that the presumption of exclusion applies here. *But see Ayuluk*, 201 P.3d at 1194-95 (applying Rules 403 and 404(b) to reverse exclusion of evidence without mentioning presumption of exclusion).

These issues were not raised in the superior court, were not raised on appeal, were not briefed by the parties, and are not properly before us. We leave these issues for another day.

started before his injury," noting that "[t]here had been at least one observation of speech difficulty before the accident by a superior at work [and] [t]here had also been observations of shortness of breath, slowness at work, and difficulty with speech and movement." ACS submitted deposition testimony from another medical doctor that in determining the cause of Conley's motor neuron condition, he would place weight on evidence of stumbling or slurred speech.

When the superior court considered Conley's pretrial motion, each piece of disputed evidence could reasonably be seen to have some permissible relevance: (1) the write-up for abusive behavior towards a supervisor could suggest emotional outbursts symptomatic of motor neuron disease, but is less probative of Lynden's knowledge of Conley's attitude toward safety; (2) the accident report that Conley's foot slipped off a forklift brake could be probative of Lynden's knowledge of Conley's carelessness when loading and unloading cargo or of coordination problems from a preexisting motor neuron disease; (3) the verbal warning that Conley was performing slowly and lacked initiative could be probative of difficult movement caused by a motor neuron disease; (4) the warning letter that Conley "need[ed] to pay closer attention when loading trailers" could indicate that Lynden should have known he was careless when loading and unloading cargo, but is less probative of the motor neuron disease; (5) the injury report for a slip and fall on ice could indicate coordination problems from a preexisting motor neuron disease, but it is less probative of his carelessness and Lynden's negligence; (6) the warning letter that Conley dropped a dock plate on his foot and threw a hammer could indicate that Lynden should have known Conley was careless when loading and unloading cargo, and the accident and outburst could be probative of a motor neuron condition.

Conley's opening brief to us regarding the denial of the motion in limine does not mention ACS's pretrial contention that the proffered evidence was relevant to

its trial theory that he exhibited signs of a motor neuron disease prior to the accident. Any argument that the proffered evidence directed to that issue was not relevant is waived.[12] Conley's argument that the proffered evidence was not relevant to ACS's claim that Lynden negligently trained and retained him as an employee essentially is limited to the following statements:

> None of the evidence was relevant as to the key issue in this case, which was why did the reel fall off of the fork lift forks onto Conley, nor were probative as to whether the specific actions of Conley in approaching the reel to remove his chains was negligent.
>
> . . . .
>
> None of the write ups demonstrated that Lynden . . . was put on notice of conduct on the part of Conley that was related to his actions which ACS alleged was a cause of the accident.

The first statement is simply wrong. There were two relevant key issues — the timing and cause of Conley's motor neuron disease, and whether Lynden was negligent and a legal cause of the accident such that fault could be attributed to it. The second statement goes more to the weight to be given the evidence rather than its admissibility, and certainly some of the evidence related to Conley's work loading and unloading cargo. While the evidence varied in its probative value, ACS at least demonstrated that the evidence was relevant to non-propensity purposes. And even if the incidents were not all highly probative, they went to important issues. Accordingly,

---

[12] *Kingery v. Barrett*, 249 P.3d 275, 285 (Alaska 2011) (stating party waives legal arguments by "inadequately briefing them"); *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

we conclude that the superior court did not err at the pretrial stage in determining that the disputed evidence was relevant to ACS's trial theories.

The second question we must ask is whether the superior court abused its discretion in determining that the probative value of the evidence outweighed the danger of unfair prejudice. Conley would have us review the superior court's decision based on how ACS actually used the evidence at trial, arguing that ACS's use of the evidence as propensity evidence demonstrates not only the danger of unfair prejudice, but actual unfair prejudice, and that the superior court therefore abused its discretion by denying his motion in limine.[13] But the superior court's decision was based on its pretrial weighing of the probative value of the evidence and the danger of unfair prejudice from the presentation of that evidence in the manner and for the purpose proffered. The superior court could reasonably assume that ACS would present the evidence for its stated purposes and that if ACS strayed from those purposes during trial, Conley would object and, if necessary, request a limiting instruction. The superior court's denial of the motion in limine did not mean ACS's use of the evidence at trial was unfettered, and Conley's failure to take appropriate action when ACS improperly used the evidence during trial does not mean the superior court abused its discretion before trial by denying the motion in limine. And Conley does not argue on appeal that when the superior court denied the motion in limine and Conley then failed to ask for any kind of limiting order regarding use of the evidence, the superior court committed plain error by not sua sponte placing limits on ACS's proposed use of the evidence.[14]

---

[13]     For purposes of Conley's appeal, we accept his argument that ACS actually used the evidence as propensity evidence directed at Conley rather than as evidence of Lynden's negligence or the timing of Conley's motor neuron disease.

[14]     *Cf.* Alaska R. Evid. 105 ("When evidence which is admissible . . . for one
(continued...)

In light of what was before the superior court in connection with the pretrial motion in limine — including the reasonable assumptions that ACS would follow the rules in its presentation of the disputed evidence and that Conley would, if he deemed it necessary, raise appropriate objections and ask for appropriate limiting instructions — and in light of Conley's failure to make any argument to us in his opening brief that ACS's proposed use of the evidence on the motor neuron disease issue violated Alaska Evidence Rules 402-404, we cannot say that "the potential danger predominated so greatly as to leave us firmly convinced that admitting the challenged evidence amounted to a clear abuse of discretion."[15] Based on all of the foregoing, and the required deferential standard of review, we affirm the superior court's pretrial denial of Conley's motion in limine.

We now turn to Conley's assertion that ACS's actual use of the evidence during trial itself warrants reversal. Conley asserts that ACS used the evidence for propensity purposes in several instances. For example, in examining one witness ACS asked, "Mr. Conley was one of the people who stood out in terms of safety problems of the Lynden drivers? Right?" With another witness ACS asked, "[W]ould you agree . . .

---

[14]    (...continued)

purpose but not admissible . . . for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly.") (emphasis added); *see also Sowinski v. Walker*, 198 P.3d 1134, 1160 (Alaska 2008) (explaining limiting instruction is required only if requested).

The dissent contends that the superior court had an independent obligation "to inform the parties of the permissible non-propensity purpose and to offer them an appropriate limiting instruction to ensure that the jurors considered the evidence only for non-propensity purposes." Because Conley did not raise this issue of first impression on appeal and neither party had reason to brief it to us, we do not consider it here, but rather leave it for another day.

[15]    *Brandner*, 171 P.3d at 87.

that he kind of has got a pretty spotty record, including for safety?" then stated, "He's not a very safe guy to begin with." In its closing argument, ACS listed the past incidents and said, "Mr. Conley is somebody who would do this. No one else in the history of these unloads . . . had gone in front of a reel while it was still up on the forks. Mr. Conley was impatient, he was angry, he did things he knew not to do . . . ." But Conley neither objected nor requested curative instructions during these instances.

Conley argues that under *Landers v. Municipality of Anchorage*[16] he had no obligation to object to the use of the evidence during trial because the superior court already had ruled on its admissibility pretrial. *Landers* involved a lawsuit over destruction of personal property in which the superior court granted a motion in limine to exclude evidence of the property's sentimental and emotional value.[17] The defendant argued on appeal that the plaintiff waived his right to challenge the ruling on the motion in limine because he did not object to certain jury instructions that reflected the ruling.[18] We concluded that failing to object to the instructions did not prevent us from reviewing the motion in limine.[19]

*Landers* is distinguishable from this case for two reasons. First, the argument in *Landers* was that the failure to object to the jury instruction prevented us from reviewing the pretrial ruling.[20] ACS concedes we can review the pretrial ruling here, but argues that Conley waived the right to challenge the actual use of the evidence

---

[16] 915 P.2d 614 (Alaska 1996).

[17] *Id.* at 615-16.

[18] *Id.* at 617.

[19] *Id.*

[20] *Id.*

at trial. Second, unlike the single-issue discrete category of damages in *Landers*, here we have two distinct issues: (1) the superior court's decision to allow the disputed evidence for the permissible purposes ACS proffered; and (2) ACS's actual use of the disputed evidence for impermissible purposes. The superior court's decision to allow admission of the disputed evidence for certain permissible purposes was not a decision that the disputed evidence could be used for impermissible purposes. Conley was obligated to stay vigilant to ACS's evidence use during trial and to object to possible violations of the evidence rules. Because Conley failed to object to the improper uses of the past incidents and write-ups, that issue was not preserved for appeal.[21]

Absent a preserved evidentiary objection, we reverse the use of evidence only if we conclude there was plain error.[22] But Conley does not argue that the superior court committed plain error by not sua sponte limiting ACS's attorney's use of the disputed evidence during trial. Conley argues that the superior court erred in its initial pretrial ruling and that Conley was powerless to object when ACS impermissibly used

---

[21]     *See Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1102-03 (Alaska 2002) (holding that to preserve issue for appeal defendant needed to object at trial to expert testimony exceeding scope of pretrial ruling); *see also State v. Thomes*, 697 A.2d 1262, 1264 (Me. 1997) (holding that defendant failed to preserve issue for appeal when pretrial ruling admitted evidence for a limited purpose, evidence presented at trial exceeded that purpose, and defendant failed to object).

[22]     Alaska R. Evid. 103(d); *see also Adams v. State*, 261 P.3d 758, 764 (Alaska 2011). To rise to the level of plain error, the error must be obvious, must be prejudicial, must affect substantial rights, and cannot be the result of an intelligent waiver or a strategic decision not to object. *Khan v. State*, 278 P.3d 893, 900 (Alaska 2012) (citing *Adams*, 261 P.3d at 771).

the evidence during trial. Having already resolved those arguments, we do not consider plain error.[23]

## B.    Res Ipsa Loquitur Instruction

Conley challenges the superior court's rejection of his proposed res ipsa loquitur instruction. Jury instruction decisions generally involve questions of law to which we apply our independent judgment.[24]

The res ipsa loquitur doctrine applies only "when an accident ordinarily does not occur in the absence of negligence."[25] It allows a plaintiff claiming negligence to rely upon circumstances surrounding an injury as an inferential bridge for establishing breach of a duty of care.[26] However, a plaintiff cannot rely on res ipsa loquitur if the evidence furnishes a complete explanation of the accident.[27] That is, "if the evidence discloses the circumstances of the accident to the extent that there is nothing left to infer, then the doctrine of res ipsa loquitur, which is founded upon inference, is no longer

---

[23]    The dissent argues that the trial testimony ACS actually adduced did not support its pretrial assertions about the relevance of the proffered evidence. But even assuming this to be the case, it does not mean that the superior court erred in its pretrial ruling based on what was presented to it at that time. And had Conley made an objection during trial or asked the superior court to revisit its evidentiary ruling in light of actual trial testimony, he might well have obtained appropriate relief. He did not do so, and he does not now argue that the superior court committed plain error by not sua sponte taking action. We therefore do not address this issue.

[24]    *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 646 n.50 (Alaska 2007)).

[25]    *Falconer v. Adams*, 974 P.2d 406, 414 n.12 (Alaska 1999) (citing *State Farm Fire & Cas. Co. v. Municipality of Anchorage*, 788 P.2d 726, 730 (Alaska 1990)).

[26]    *Id.*

[27]    *Widmyer v. Se. Skyways, Inc.*, 584 P.2d 1, 11 (Alaska 1978).

needed."[28]  Although res ipsa loquitur is not precluded merely because a litigant offers a possible explanation of the events, it is precluded where a witness directly involved in the incident completely describes the circumstances.[29]  For example, we rejected res ipsa loquitur in a suit arising from a car accident when the driver testified to the events surrounding the accident[30] and in a suit arising from an airplane crash when the passenger testified to the pilot's specific acts prior to the crash.[31]

Here both Conley and Rudolph witnessed the accident and testified about their perceptions of the event.  Rudolph testified that she lifted the reel with the forklift, moved the reel away from the trailer and lowered it to a few inches above the ground. She explained how Conley signaled for her to stop, how he stepped in front of the reel and pulled on a chain through the center, and how the reel toppled.  Conley described the same events from his perspective.  Though neither explained exactly what caused the reel to fall, they presented the jury with a complete, eyewitness account of the accident's circumstances.  Both parties presented other testimony relying on these eyewitness accounts to explain the accident's cause.  Because the jury received a complete account

---

[28]    *Crawford v. Rogers*, 406 P.2d 189, 193 (Alaska 1965).

[29]    *See Widmyer*, 584 P.2d at 11-12 (reasoning that a possible explanation of events did not preclude res ipsa loquitur instruction when there were no survivors to testify, there was no direct evidence of accident's cause, and there was heavy reliance on expert witnesses); *see also State Farm*, 788 P.2d at 731 (allowing a res ipsa loquitur instruction when there were no eyewitnesses and only expert inferences as evidence of incident's cause).

[30]    *Evans v. Buchner*, 386 P.2d 836, 837 (Alaska 1963) (holding res ipsa loquitur inapplicable in car accident suit when driver "explained to the best of his recollection everything that occurred prior to the [car] overturning").

[31]    *Crawford*, 406 P.2d at 193-94 (holding res ipsa loquitur inapplicable in airplane crash suit when passenger described pilot's conduct that could have caused airplane to go into a spin).

of the accident's circumstances, there was no need for res ipsa loquitur's inferential bridge to breach of duty and the superior court did not err in declining to issue that instruction.

## C.    Directed Verdict,  JNOV, And New Trial Motions

Conley argues that the superior court erred by denying his motion for a directed verdict at the close of the evidence, his motion for judgment notwithstanding the verdict (JNOV), and his motion for a new trial.  We first address the directed verdict and JNOV motions, then turn to the new trial motion.

The denial of a directed verdict or JNOV is reviewed de novo.[32]  "Where such a motion is evidence based, a trial court can . . . grant the motion [only when] the evidence is such that, when viewed in the light most favorable to the nonmoving party, reasonable people could not differ in their judgment; an appellate court must use the same test."[33]

Conley asked the superior court to direct a verdict that he had "established that the accident caused his back injury, [and] his orthopedic injuries," and that he was "entitled to any damages connected to those injuries."  After the jury verdict, Conley renewed the argument in a motion for JNOV.  ACS opposed both motions, arguing that Conley had not established who was at fault for the accident.  We agree with ACS: Whether the accident caused Conley's orthopedic injuries was not the threshold question for the jury; the threshold question was whether ACS's negligence — not the accident generally — caused the injuries.

---

[32]    *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 584 (Alaska 2012); *Cameron v. Chang-Craft*, 251 P.3d 1008, 1016-18 (Alaska 2011).

[33]    *Borgen*, 273 P.3d at 584 (citing *Cameron*, 251 P.3d at 1016-18; *Lynden, Inc. v. Walker*, 30 P.3d 609, 612 (Alaska 2001); *Mullen v. Christiansen*, 642 P.2d 1345, 1348 (Alaska 1982)).

Conley's special verdict form read: "Was defendant, ACS's negligence a substantial factor in causing harm to the plaintiff, Brett Conley?" The real heart of Conley's argument is that the jury could not return a sustainable verdict by finding that ACS was negligent, but that its negligence was not a substantial factor in causing Conley's harm. Conley argues that "given the evidence at trial, no reasonable juror could decide that ACS's negligence was not a cause of [Conley's] injury." Conley essentially argues that in finding negligence but not causation, the jury returned an inconsistent verdict. But we have said that "[w]e will not disturb a jury verdict if there is a theory which reconciles the apparent inconsistencies."[34]

In moving for JNOV, Conley asked, "How could defendant's forklift operator being negligent not be the cause of the accident?" But ACS reconciles any apparent inconsistency, pointing out that the jury could have found that ACS was negligent on other grounds and that this negligence was not a substantial factor in causing Conley's injuries. First, there was evidence that Rudolph did not negligently operate the forklift. Both Rudolph and Conley testified that the forks were fully tilted back, correctly positioning the reel on the lift. Witnesses, including one of Conley's experts, asserted that there was no possibility the reel could have fallen off the lift if the forks were properly positioned. But ACS's engineering expert testified that even with the forks properly positioned, if the chain running through the reel got caught in a manner lending Conley a mechanical advantage, Conley could have caused the reel to fall when he pulled on the chain. Conley testified that when he tried to remove the chain

---

[34] *Yang v. Yoo*, 812 P.2d 210, 215 (Alaska 1991); *see also Borgen*, 273 P.3d at 585 ("To give effect to the jury trial right in civil cases, a court must determine, by examining the pleadings, instructions, arguments, and evidence, whether there is a logical view of the case that harmonizes what seems at first to be an inconsistent verdict.") (quoting *Schmit v. Stewart*, 601 P.2d 256, 256 (Alaska 1979) (internal quotation marks omitted)).

it "bound a little bit," so he "gave it a good pull" and then dropped the chain, all before the reel fell over. In a pretrial statement introduced at trial, Conley said he realized he "kind of pulled [the chain] too hard." Although Conley argues that ACS's expert testimony is speculative and could not form the basis of the jury's opinion, we do not agree. Based on Conley's own testimony, the jury could have found sufficient facts to support the expert opinion.

Second, the jury could have found ACS negligent because Rudolph failed to hold a "toolbox meeting" before unloading the reel to ensure that Conley was apprised of proper unloading procedures, or, as Conley's forklift expert testified, because ACS inadequately trained Rudolph. Neither of those theories necessarily contradicts the jury's finding of no causation. In light of Conley's testimony that he had transported similar reels "hundreds" of times and that he had been taught not to stand where a load could fall on him and not to approach a reel unless it was secure, the jury could have concluded that Rudolph's failure to instruct Conley on unloading procedures at a "toolbox meeting" had no bearing on the conduct leading to the accident. Similarly, in light of testimony that Rudolph properly operated the forklift, the jury could conclude that ACS's failure to adequately train Rudolph was not a cause of the accident.

Considering this evidence in the light most favorable to ACS, the jury could have concluded that ACS was negligent but that ACS's negligence did not cause Conley's injuries. Therefore we cannot agree that "no reasonable juror could decide that ACS's negligence was not a cause of [Conley's] injury." The superior court did not err in denying a directed verdict and JNOV.

Conley also argues that the superior court erred in denying his motion for a new trial. The decision to grant or deny a new trial is within the trial court's

discretion.[35] We will "disturb the [superior] court's exercise of discretion only in the most exceptional circumstances to prevent a miscarriage of justice"; that is, "when evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust."[36] Again we view the evidence in the light most favorable to the non-moving party.[37]

Conley raises three arguments in support of his motion for a new trial. As in the JNOV argument, Conley asserts that the evidence "was so slight and unconvincing" as to not support the jury's finding of no causation. But as outlined above, viewing the evidence in favor of ACS, the jury could have found ACS negligent in a manner that did not cause Conley's injuries. The evidence of no causation was not so slight and unconvincing as to make the verdict unreasonable and unjust.[38] Conley also argues that a new trial is warranted because of the admission of prejudicial propensity evidence and the rejection of his res ipsa loquitur instruction. We addressed both of those issues above and found no reversible error. Therefore the superior court did not err in denying Conley's motion for a new trial.[39]

---

[35] *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005) (citing *Kava v. Am. Honda Motor Co.*, 48 P.3d 1170, 1173 (Alaska 2002)).

[36] *Id.* (quoting *Getchell v. Lodge*, 65 P.3d 50, 53 (Alaska 2003)) (quotation marks omitted).

[37] *Id.* (citing *Kava*, 48 P.3d at 1173).

[38] *See id.*

[39] In his statement of points on appeal, Conley asserted that the superior court erred in denying a JNOV or new trial as to the absence of Conley's and Lynden's comparative negligence. Because these arguments were not addressed in Conley's briefing, we do not consider them here. *Patrawke v. Liebes*, 285 P.3d 268, 271 n.7 (Alaska 2012) ("[W]here a point is given only a cursory statement in the argument
(continued...)

## V.    CONCLUSION

We AFFIRM the superior court's judgment.

_____

**39**     (...continued)
portion of a brief, the point will not be considered on appeal." (alteration in original) (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991))).

FABE, Chief Justice, dissenting.

In my view, the superior court abused its discretion by denying Conley's motion in limine to exclude evidence of prior bad acts that were highly prejudicial, only minimally probative, and not submitted for a significant non-propensity purpose. Moreover, the superior court compounded the harm of its admission of this evidence by failing to identify the permissible non-propensity purpose for which the evidence would be received. It was the superior court's responsibility to inform the parties of the permissible non-propensity basis for its admission of the evidence and to offer them an appropriate limiting instruction to ensure that the jurors considered the evidence only for non-propensity purposes. Its failure to do so compounds the error of the superior court's initial denial of Conley's motion in limine to exclude the evidence of prior bad acts. Accordingly, I respectfully dissent.

This case implicates three Alaska Rules of Evidence.[1] Rule 402 provides the general background rule that "[a]ll relevant evidence is admissible, except as otherwise provided . . . ."[2] Rule 403 provides one exception to Rule 402 admissibility, specifying that "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."[3] Finally, Rule 404(b)(1) provides another exception, specifying that

---

[1] I rely on the court's statement of the facts of the case.

[2] Alaska R. Evid. 402. Alaska Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3] Alaska R. Evid. 403. In its typical application, this balancing test measures the probative value of the evidence against its deleterious effects. Where the prejudicial effect is "demonstrably greater," the evidence must be excluded. Commentary Alaska

(continued...)

"[e]vidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith."[4] The purpose behind this prohibition is to hinder "the endeavor to fasten guilt upon [a party] by proof of character or experience predisposing to an act of crime"[5] because "[t]he natural and inevitable tendency of the tribunal . . . is to give excessive weight to the vicious record . . . thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge."[6] Our Rules of Evidence ensure that "a [party] starts his life afresh when he stands before a jury."[7] Rule 404(b)(1) goes on to carve out a limited exception to this exception, permitting the admission of prior bad acts under Rule 402 "for . . . purposes [other than to show that the person acted in conformity therewith], including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[8]

The barriers to introducing evidence of prior bad acts are formidable. The very existence of Rule 404(b)(1) leads to the conclusion that "[a]dmission of evidence of prior bad acts is by its nature highly prejudicial and should always be subject to

---

[3]     (...continued)
E. R. 403.

[4]     Alaska R. Evid. 404(b)(1).

[5]     *People v. Zackowitz*, 172 N.E. 466, 468 (N.Y. 1930) (Cardozo, J.).

[6]     *Id.* (quoting 1 WIGMORE, EVIDENCE § 194 (1923)).

[7]     *Id.*

[8]     Alaska R. Evid. 404(b)(1).  Other provisions in Rule 404(b) carve out additional exceptions not relevant in this case.

careful scrutiny."[9]  Accordingly, we have held that Rule 404(b)(1) creates a presumption against the admissibility of evidence of prior bad acts for any purpose due to its significant prejudicial impact.[10]  At least in a civil case,[11] the party seeking to introduce evidence of prior bad acts must therefore bear the burden of demonstrating two things in order to overcome that presumption.

First, the party must demonstrate that it will offer the evidence for a permissible purpose *other* than to show that a party acted in conformity with the propensity implied by the prior bad acts.  But not just *any* non-propensity purpose will suffice to bring the evidence into court through Rule 404(b)(1)'s limited carve-out.  Rather, the proffered non-propensity purpose must pass a threshold of significance that adequately protects against the unavoidable prejudicial effect of evidence of prior bad acts.[12]

---

[9]     *Coleman v. State*, 621 P.2d 869, 874 (Alaska 1980).

[10]     *See Oksoktaruk v. State*, 611 P.2d 521, 524 (Alaska 1980) ("[T]he rule regarding evidence of prior crimes is a 'rule of exclusion of evidence and not one of admission . . . .' " (quoting *United States v. Burkhart*, 458 F.2d 201, 204 (10th Cir. 1972))).  Like all presumptions, this presumption consists of an initial allocation of burden and a quantum of production required to overcome the presumption.  BLACK'S LAW DICTIONARY 1304 (9th ed. 2009).

[11]     This discussion addresses only civil cases.  I do not address the analysis of Rule 404(b) following an amendment in 1991 that may alter the application of Rule 404(b) in criminal cases.  *See* ch. 79, § 1(c), SLA 1991.

[12]     *Oksoktaruk*, 611 P.2d at 524 ("If prior crimes were found admissible whenever offered to prove a fact classified as material to the prosecution's case, 'the underlying policy of protecting the accused against unfair prejudice . . . [would] evaporate through the interstices of the classification.' " (alteration in original) (quoting MCCORMICK ON EVIDENCE § 190, at 453 (Edward W. Cleary et al. eds., 2d ed. 1972))).

Second, even if evidence of prior bad acts satisfies Rule 404(b)(1)'s limited carve-out for non-propensity uses, the evidence must still satisfy Rule 403's requirement that it be more probative than prejudicial.[13] Moreover, we have held that Rule 404(b)(1)'s presumption of inadmissibility of evidence of prior bad acts alters the normal Rule 403 balancing test.[14] Because evidence of prior bad acts is presumed to be prejudicial, "[t]enuous or marginal probative value of prior crimes evidence must never be allowed to serve as an excuse for implanting prejudice in the minds of the jury."[15] In light of Rule 404(b)(1), a party seeking to pass Rule 403's test must do more than that rule normally requires.[16] The party seeking to introduce evidence of prior bad acts must

---

[13] *See, e.g.*, *Hess v. State*, 20 P.3d 1121, 1128 (Alaska 2001) (addressing whether attempted introduction of prior acquittal was more probative than prejudicial after assuming that the evidence would meet the requirements of Rule 404(b)'s carve-outs); *see also* Commentary Alaska E. R. 404(b) ("Of course, 'other crimes' evidence admissible under Rule 404(b) may be excluded under Rule 403.").

[14] *Lerchenstein v. State*, 697 P.2d 312, 315 n.2 (Alaska App. 1985) ("Evidence Rule 404(b) modifies the normal balancing process under Evidence Rule 403 by requiring the trial court to begin with the assumption that the evidence should be excluded."), *aff'd*, 726 P.2d 546 (Alaska 1986) ("[*Lerchenstein*] is affirmed for the reasons expressed therein."); *see also Coney v. Municipality of Anchorage*, Mem. Op. & J. No. 566, 1991 WL 11657239 (Alaska, July 24, 1991) ("Even after the trial court determines that the evidence may tend to prove a material fact, a presumption remains that the evidence is not admissible. [*Lerchenstein*]. This presumption arises from the recognition that propensity evidence always carries some amount of unfair prejudice.").

[15] *Freeman v. State*, 486 P.2d 967, 979 (Alaska 1971).

[16] Normally, Rule 403 carries a slight presumption of admissibility that is overcome upon a showing that the evidence's prejudicial effect is "demonstrably greater" than its probative effect. *See supra* note 3. But the presumption created by Rule 404(b)(1) flips the initial burden, presuming the inadmissability of evidence of prior bad acts, and also raises the bar for the production necessary to overcome that

(continued...)

show that the evidence's use for non-propensity purposes will be substantial enough to outweigh the substantial risk of prejudice that such evidence always carries.[17]

In sum, Rule 404(b)(1) creates a presumption of exclusion of evidence of prior bad acts until the party seeking to use that evidence proves that the evidence is significantly more probative of a substantial non-propensity purpose than it is prejudicial. In this way, the two steps discussed above — first qualifying for a Rule 404(b)(1) carve-out for non-propensity purposes, and then satisfying Rule 403's balancing test as sufficiently more probative than prejudicial — can both be seen as addressing the same question: whether the party seeking to use evidence of prior bad acts has satisfied the high burden imposed by the rules of evidence that presume that such evidence is too prejudicial and should be excluded.

In this case, I would hold that the superior court abused its discretion by denying Conley's motion in limine to exclude evidence of prior bad acts under Alaska Rules of Evidence 403 and 404(b)(1). First, ACS failed to meet its burden of demonstrating that the evidence should come in for a significant non-propensity purpose within Rule 404(b)(1)'s limited carve-out. One of ACS's proffered non-propensity purposes was to show that Conley's motor neuron disease preexisted the accident, as

---

[16]     (...continued)
presumption.

[17]     *Oksoktaruk*, 611 P.2d at 524-25 ("Our cases are thus in accord with the orientation of a leading treatise-writer, who urges that a prior crime be 'so related to the crime charged in point of time or circumstances that evidence thereof is significantly useful in showing the defendant's intent in connection with the crime charged,' before evidence of the prior crime is judged more probative than prejudicial." (footnote and citation omitted)); *Lerchenstein*, 697 P.2d at 318 ("Even if deemed relevant for a permissible purpose under Evidence Rule 404(b), however, the evidence should only have been introduced if its probative value outweighed its prejudicial impact to such an extent that the presumption favoring exclusion was overcome.").

revealed by the work-related incidents at issue in this case. But ACS never offered any reason to conclude that these work-related incidents were relevant for that purpose beyond merely asserting that "[t]he [work-related] incidents . . . are consistent with the onset of the symptomology of [the motor neuron disease]." ACS offered no medical opinions supporting this assertion of a non-propensity purpose. And the course of the trial revealed that ACS's proffered non-propensity purpose was insubstantial, nonexistent, or pretextual. ACS's own medical expert testified that, in her opinion, Conley's motor neuron symptoms began in July 2007, years after these work-related incidents.

ACS's second proffered non-propensity purpose for the evidence of prior bad acts was to show that Lynden negligently employed Conley despite knowing that he "was an accident waiting to happen." But we have previously held that evidence of prior bad acts in job performance may be admissible to show that the employer should have known of the employee's likelihood of causing injury only where those bad acts display the specific type of conduct that caused the injury in the present case.[18] The misconduct on display in the work-related incidents in this case was not of the type that should have put an employer on notice that Conley was likely to injure himself in the way ACS alleges occurred in this case.

Moreover, ACS failed to meet its burden of demonstrating that the use of the evidence would be significantly more probative than prejudicial and thus overcome the presumption that such evidence shall be excluded. ACS introduced evidence that

---

[18] *See Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1194-95 (Alaska 2009). In other words, an argument that an employer tortiously employed an employee is not an automatic license to rummage through the employee's work history. Only those prior bad acts that speak directly to the type of injury allegedly caused by the employee may be admitted under Alaska Rule of Evidence 404(b)(1).

Conley had a record of prior accidents and disciplinary problems at work. Such a record is extremely prejudicial to Conley's claim that, in this case, he was not responsible for his injury. That ACS actually used that evidence to argue to the jury that "Mr. Conley is somebody who would do this" only confirms what was obvious when the superior court ruled on Conley's motion in limine: This evidence had extraordinary potential to prejudice the jury with the implication that Conley's actions in this case were in conformance with the prior acts detailed in evidence.

On the other side of the balance, the evidence of prior bad acts had only marginal, if any, probative value for non-propensity purposes. One of ACS's proffered non-propensity purposes was to show that Conley's motor neuron disease preexisted the accident. But the handful of incidents documented in these work reports over the course of years (such as a slip and fall on ice, a foot slipping off a brake pedal, missing a delivery, taking too many breaks, or becoming angry after dropping a heavy object on one's foot) can hardly be understood as providing more than extremely tenuous, if any, support for ACS's argument. ACS's second proffered non-propensity purpose for the evidence of prior bad acts was to show that Lynden negligently employed Conley despite knowing that he "was an accident waiting to happen." But almost all of the evidence was irrelevant to this claim. Being written up for losing his temper, taking excessive breaks, missing a delivery, and slipping on ice while wearing the required traction devices are not indicative of the accident in this case. And the other two incidents — dropping a plate of metal on his foot and throwing a hammer in anger, and getting his foot caught between the accelerator and brake pedals of a vehicle and damaging a sprinkler — are of only marginal probative value in assessing whether an employer tortiously kept an

employee on the payroll. On balance, I would hold that "the slight probative value such evidence may have is far outweighed by its potential for prejudice."[19]

Today's court seemingly ignores the purposes behind Evidence Rules 403 and 404 and thus reaches the wrong result. The court relies on the notion that "each piece of disputed evidence could reasonably be seen to have *some* permissible relevance" to a non-propensity argument, such as ACS's contentions that Lynden was negligent in employing Conley and ACS's theory that symptoms of Conley's motor neuron disease manifested prior to the accident.[20] The court then concludes that ACS "at least demonstrated that the evidence was relevant to non-propensity purposes."[21] But Rule 404(b) requires more than a demonstration of mere relevance to some non-propensity purpose in order to qualify for its limited carve-out. And as explained above, the proffered evidence was only minimally, if at all, relevant for non-propensity purposes and did not surpass the presumption of inadmissability imposed by Rule 404(b)(1).

The court also concludes that it cannot say that the superior court abused its discretion by determining that the probative value of the evidence outweighed its prejudicial effect.[22] But the court provides no explanation for this determination and never estimates the prejudicial or probative value of the evidence. Rather the court merely states that it cannot look to ACS's actual use of the evidence in trial when evaluating the superior court's decision to reject Conley's motion in limine, and then states that the superior court was entitled to assume that "ACS would follow the rules"

---

[19]     *Fields v. State*, 629 P.2d 46, 50 (Alaska 1981).

[20]     Op. at 10 (emphasis added).

[21]     *Id.* at 11.

[22]     *Id.* at 13.

and that "Conley would . . . raise appropriate objections."[23] But we have held that once a trial court has denied a party's motion in limine, the party has no duty to continue to object during trial in order to challenge the initial denial on appeal.[24] And the court's entire line of reasoning fails to explain or resolve how the prejudicial and probative values of the evidence should be weighed. That weighing process must occur in order to decide whether the superior court abused its discretion in denying Conley's motion in limine.[25] In my view, the superior court abused its discretion because any marginal probative value of the evidence was far outweighed by its likely prejudicial effect.

Moreover, the superior court compounded the harm of its admission of this evidence by failing to identify any permissible non-propensity purpose for which the evidence would be received. It was the superior court's responsibility to inform the parties of the permissible non-propensity basis for its admission of the evidence and to offer them an appropriate limiting instruction to ensure that the jurors considered the evidence only for proper non-propensity purposes. Its failure to do so constitutes additional error flowing from the superior court's denial of Conley's motion in limine to exclude the evidence of prior bad acts.

Even when a court denies a motion in limine to exclude evidence of prior bad acts, the court should take contemporaneous steps to ensure that the use of that evidence does not stray beyond the bounds imposed by the Alaska Rules of Evidence.

---

[23] *Id.*

[24] *Landers v. Municipality of Anchorage*, 915 P.2d 614, 617 (Alaska 1996).

[25] *See Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002) ("When reviewing the exclusion of evidence under Evidence Rule 403 as unfairly prejudicial, we first consider the relevance of the [excluded evidence] and then determine whether its prejudicial effect so outweigh[s] its probative value that admission by the trial judge constitute[s] a clear abuse of discretion." (quotation marks and citations omitted) (alterations in original)).

In a case involving extremely prejudicial evidence of prior bad acts, we have praised a trial court judge who "indicated his awareness of th[e] requirement[s] [of the Rules of Evidence] by carefully taking steps to ensure that the testimony regarding the prior rape was properly limited in its presentation before the jury, in order to minimize its prejudicial effect," including by "admonish[ing] the jury as to the limited purpose of the evidence immediately prior to its presentation and also [giving] a written cautionary instruction as to its limited use."[26]  And it is well-established in the federal courts that failure to issue a limiting instruction sua sponte in order to prevent the misuse of evidence of prior bad acts can constitute plain error in at least some cases.[27]  Indeed, in the Sixth Circuit, trial courts must issue limiting instructions any time "Rule 404(b) evidence is received" in order to keep the use of that evidence within the bounds of the rules of evidence.[28]  As Justice Cardozo stated so eloquently over 140 years ago, "The practice of calling out evidence for one purpose, apparently innocent, and using it for another, which is illegal, is improper; and, if it is clear and manifest that the avowed object is colorable merely, its admission is error."[29]

In sum, it was error to admit this evidence of prior bad acts at all, and that error was compounded by the admission of the evidence without appropriate steps to protect against improper use of that evidence.

ACS's improper use of the evidence of prior bad acts at trial in this case highlights the gravity of the superior court's error in denying Conley's motion in limine.

---

[26]     *Coleman v. State*, 621 P.2d 869, 876 (Alaska 1980).

[27]     *See, e.g.*, *United States v. Bobbitt*, 450 F.2d 685, 691 (D.C. Cir. 1971).

[28]     *See United States v. Hemphill*, 76 F. App'x 6, 13 (6th Cir. 2003).

[29]     *People v. Zackowitz*, 172 N.E. 466, 469 (N.Y. 1930) (Cardozo, J.) (citation omitted).

ACS stated during closing arguments, "Mr. Conley really was an accident waiting to happen. Mr. Conley is somebody who would do this." This is a clear case of using evidence of prior bad acts to establish propensity and then argue that a litigant has acted in conformance therewith. Indeed, it is hard to imagine a clearer example than stating that a litigant "is somebody who would do this." The superior court's failure to issue a limiting instruction sua sponte would constitute plain error if it were fairly raised to this court on appeal.[30] Even if Conley's appellate brief in this case does not fairly raise a plain-error argument, ACS's improper use of the evidence at trial confirms what was true in this case from the outset: This evidence had such high potential for prejudice and such low probative value of any non-propensity purpose that the evidence should have been

---

[30]    "Absent a finding of plain error, . . . appellant's failure to request a limiting instruction at trial waived that claim [that use of evidence of prior bad acts for propensity purposes should be prohibited by a limiting instruction]." *Adkinson v. State*, 611 P.2d 528, 533 (Alaska 1980) (footnote omitted) (alterations and omissions added).

    "Plain error is an error that (1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial." *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011). Nothing in our precedent precludes the conclusion that it is plain error to fail to issue a limiting instruction sua sponte when the use of evidence of prior bad acts was so prejudicial and so minimally probative as it was in this case.

    The error in this case would have been obvious because the evidence was so highly prejudicial and of such marginal probative value, and because Conley would have been entitled to a limiting instruction had he requested one under Alaska Rule of Evidence 105 such that it would have been reversible error for the superior court to deny such a request. Conley's right to such an instruction was "so obvious that the trial court should have noticed it despite the absence of an objection." *Adams*, 261 P.3d at 772. The error was prejudicial and affected substantial rights because evidence of prior bad acts is always substantially prejudicial. *Coleman*, 621 P.2d at 874. Finally, there is no indication that Conley failed to object for strategic purposes. How it could possibly benefit Conley to forego a limiting instruction issued by the trial court in favor of his lawyer's own admonitions is left unclear.

excluded following Conley's motion in limine.  And when the superior court admitted the evidence, the superior court had a duty to carefully delineate the purposes for which the evidence could be used and to enforce those limitations through appropriate orders and instructions.  Failure to do so compounded the reversible error of admission.

For these reasons, I respectfully dissent.  I would reverse and remand for a new trial.